485 P.2d 597

**Henry HUGHES and Barbara Smith Hughes, husband and wife, Appellants,**

v.

**GLENS FALLS INSURANCE CO., a corporation, Appellee.**

**No. 2 CA–CIV 576.**

Court of Appeals of Arizona, Division 2.

June 4, 1971.

Rehearing Denied July 1, 1971.

Review Denied Sept. 28, 1971.

Hillock & Richards by M. L. Hillock, Tucson, for appellants.

Lesher & Scruggs, P. C. by John A. Wasley, Tucson, for appellee.

HOWARD, Judge.

This is an appeal from an order of involuntary dismissal entered by the trial court below.

The facts as stipulated to by the parties on appeal are as follows.[1] On December 29, 1962, Barbara Smith Hughes was injured while riding in a 1955 Chevrolet sedan owned by one M. J. Stegall, and driven by his son. At the time of the accident, Stegall owned a family automobile policy issued by the appellee, Glens Falls Insurance Company. Stegall testified that he had had liability insurance with appellee for several years through the Rottman Insurance Agency, and that the policy in question was renewed or reissued on December 8, 1962 for a period of one year by the Rottman Insurance Agency of Willcox, Arizona. Shortly after Stegall purchased the 1955 Chevrolet and in July or August of 1962, he advised the Rottman Agency that he had acquired the 1955 Chevrolet and asked if it could be added to his policy which was in effect then and which only described a 1962 Dodge Dart automobile. Although Stegall was willing to pay any additional premiums called for, he was advised by Rottman that the 1955 Chevrolet could not be added to this policy. Stegall did not feel or believe when he left the Rottman Agency that he had obtained liability coverage for the operation of the Chevrolet and he took no further steps to obtain liability coverage covering this automobile until after the accident occurred. Following the accident, Stegall gave notification to the Rottman Insurancy Agency and was told that he had no insurance coverage. When Stegall was sued by the ap-

---

1. Appellee has frequently referred in its brief to portions of depositions which were never admitted into evidence. We have not considered any of these references in coming to our conclusion.

pellants, he did not initially ask the appellee to defend him and did not send to the appellee or any of its officers or agents the summons and complaint served upon him by appellants. Subsequently, the attorney for the appellants forwarded to the appellee a letter demanding that the appellee defend the personal injury action which had been filed against Stegall. This letter stated that entry of any default would be withheld for over thirty days to afford appellee an opportunity to defend the action and contained a copy of the summons and complaint. Shortly thereafter, appellee advised appellants' attorney that it would not undertake to defend the action stating that it had no obligation to do so. Thereafter, appellants obtained a $65,000 default judgment against Stegall.

This suit was brought against appellee to obtain payment on the insurance policy which appellants claim afforded coverage of the accident in question. Appellants appeal from the adverse judgment of the trial court.

The dispute in this case revolves around the interpretation of the insurance policy which was in existence at the time of the accident. The policy is entitled "Family Automobile Policy." Under Part One, Coverage A of the policy, the appellee agrees to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury and " * * * arising out of the ownership, maintenance, or use of the owned automobile * * *"

The definitions under Part One of the policy describe "owned automobile" as meaning "a private passenger, farm or utility automobile or trailer owned by the named insured, and includes a temporary substitute automobile;"

As part of the insurance policy, there is included a "daily report," item 4 of which, under the head "Description of Owned Automobile or Trailer," describes only a 1962 Dodge Dart 4-door. Item 5 of this daily report further states "The total number of private passenger, farm and utility automobiles owned on the effective date of this policy by the named insured does not exceed one, unless otherwise stated herein :"

Paragraph 2 of the conditions of the policy provides :

"2. If the named insured disposes of, acquires ownership of or replaces a private passenger, farm or utility automobile, or with respect to Part III, a trailer, he shall inform the company during the policy period of such change. Any premium adjustment necessary shall be made as of the date of such change in accordance with the manuals in use by the company. The named insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof."

The appellee contends that since the 1955 Chevrolet was not listed as an owned automobile in the renewal policy it was not covered. In support of its position the appellee refers to the cases of Iowa National Mutual Insurance Company v. Fidelity and Casualty Company of New York, 256 Iowa 723, 128 N.W.2d 891 (1964) ; Preferred Risk Mutual Insurance Company v. Continental Insurance Company, 172 Neb. 179, 109 N.W.2d 126 (1961) ; Wise v. Strong, 341 S.W.2d 633 (Mo.App.1960). An examination of the cases cited by appellee reveals them to be inapposite. They do not deal with the effect of a renewal policy. In fact, in the case of Wise v. Strong, supra, the existence of the additional car was concealed from the insurer by the insured. In the case at hand the insured specifically asked for coverage of the 1955 Chevrolet, which coverage was rejected by the insurance agent.

In order to make a proper determination of this case, we find it necessary to first examine the effect of the refusal to insure the Chevrolet under the policy which was in effect at the time it was acquired. The policy which was then in existence contains the same policy provision as the renewal policy. Paragraph 2 of the condi-

tions which we have heretofore mentioned appeared also in the prior policy. Paragraph 2 of the conditions of that policy is clear and unambiguous. The 1955 Chevrolet was covered under that policy and all that the insurance company was entitled to was notice within the policy period of the dated acquisition of the automobile so that it could adjust the premiums in the policy. Carey v. State Farm Mutual Insurance Company, 247 F.Supp. 381 (E.D.Va.1965); Velkers v. Glens Falls Insurance Company, 93 N.J.Super. 501, 226 A.2d 448 (1967); Imperial Casualty and Indemnity Company v. Relder, 308 F.2d 761 (8th Cir. 1962); National Union Fire Insurance Company v. Falciani, 87 N.J.Super. 157, 208 A.2d 422 (1965); Beasley v. Wolf, 151 So.2d 679 (Fla.App.1963); Quaderer v. Integrity Mutual Insurance Company, 263 Minn. 383, 116 N.W.2d 605 (1962); American Universal Insurance Company v. Costello, 95 R.I. 191, 185 A.2d 447 (1962). What was the effect of appellee's renewing the policy without including the Chevrolet? Glens Falls Insurance Company v. Gray, 386 F.2d 520 (5th Cir. 1967) contains the following dicta which we deem apropos:

\* \* \* \* \* \*

" \* \* \* But in any case, even assuming that ownership was acquired in the *preceding year*, the view urged by the Company would permit an insurance company to avoid liability with respect to any additional automobile which an insured may acquire, despite notification and a request for coverage, merely by doing nothing—not rejecting the application for coverage, not proceeding with adjustment of the premium, and not endorsing the policy. Cf. Western Mutual

Insurance Co. v. Wood, 246 Iowa 1143, 70 N.W.2d 563 (1955). It is of course obvious that an insured is unable to determine the additional premium himself without advice from the company, and it is equally obvious that the insured cannot endorse the policy *ex parte*. We are not prepared to penalize the insured because the agent may have failed to implement the insured's request for coverage and have the policy endorsed before his death. The Company must be charged with his agent's knowledge and failure to act." (Emphasis added) at 526.

Had the insurance agent acted properly, the 1955 Chevrolet would have been included by endorsement on the old policy and thus subsequently included in the renewal policy. We do not believe that it was necessary for the insured, when the renewal policy was issued, to again perform a futile act by requesting the agent to include the automobile when he had declined to do so in the past. It was not necessary for the insured to Indian wrestle with the agent for inclusion of his auto. His notification to the insurance agent prior to renewal was sufficient. [2]

Appellant has submitted other reasons for reversal of this matter but we need not consider them in view of disposition of this case.

The order of involuntary dismissal is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

KRUCKER and HATHAWAY, JJ., concur.

2. See for example Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company v. Traister, 173 So.2d 153 (Fla.App.1965) wherein the court stated:

"If he had intended to cover both of them he would have attendant costs and also he should have notified the insurer at the time of the renewal, *if not earlier*." (Emphasis added) at 156.