46714.   GORLING et al. v. ALLSTATE INSURANCE COMPANY et al.

ARGUED NOVEMBER 2, 1971—DECIDED JANUARY 27, 1972— REHEARING DENIED FEBRUARY 17, 1972—

*Ross & Finch, Charles E. McCranie, Malcolm P. Smith,* for appellants.

*Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin, Richard L. Stumm,* for appellees.

JORDAN, Presiding Judge. On September 19, 1968, H. Winton Bates was driving a 1965 Chevrolet ½-ton pickup truck which collided with another vehicle resulting in his death and that of Arthur E. Gorling, and injuries to others. A number of pending tort actions are based on the incident. Allstate Insurance Company commenced the present declaratory judgment action against interested parties to determine the extent of the liability insurance coverage it had provided on the truck driven by Bates. Mrs. Gorling, individually and as the widow of Arthur E. Gorling, and the Trust Company of Georgia, as the acting executor of the estate of Arthur E. Gorling, appeal a summary judgment dated and filed on August 17, 1971, declaring that Allstate Crusader Policy Number 0 15 514 666 07/27 does not afford liability coverage for the incident on September 19, 1968, and that Allstate Illustrator Policy Number 15 706 443 9/18

does afford coverage. The sole issue before this court is whether the judge of the lower court erred in declaring that the Crusader policy does not afford liability coverage.

The Crusader policy was issued to H. Winton Bates for the period from July 27, 1968, to July 27, 1969, to provide coverage on 1963 and 1966 Ford automobiles. Pertinent provisions include:

"2. Automobiles Covered. (a) 'owned automobiles' means the vehicle described on the Supplement Page, and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured; . . . (c) 'additional automobile' means an additional private passenger or utility automobile of which the named insured acquires ownership, provided notice of its delivery be given to Allstate within the policy term then current, or if delivery is within 30 days before the end of such term, then within 30 days after delivery; . . . (g) 'utility automobile' means an automobile with a load capacity of 1,500 pounds or less of the pick-up body, sedan delivery or panel truck type; . . . Payment of premium. If the named insured acquires an additional automobile, the premium shall be adjusted as of the date of the delivery of such automobile. The named insured shall pay any additional premium required."

Bates purchased the 1965 Chevrolet ½-ton pickup truck on September 5, 1968, for use in a joint business venture with Robin Kelly Hunt which was then in its formative stages, and which had not been incorporated on that date or at the time of Bates' death. On September 17, 1968, an agent for Allstate responded to a telephone call from Mrs. Bates, and as Bates was then at home, she referred the call to him. Pursuant to this telephone conversation the agent completed an application for Allstate to provide liability coverage on the pickup truck, binding Allstate for coverage to H. Winton Bates, d/b/a Bates & Hunt Construction Company, on the described truck effective as of 6 p.m., September 17, 1968. Based on this application Allstate issued the Illustrator policy to Bates & Hunt Construction Com-

pany, c/o H. W. Bates, to provide coverage commencing at 12:01 a.m., September 18, 1968.

The parties state that there is no Georgia case covering the precise situation here involved and our research fails to disclose any controlling Georgia decision on the matter. Similar situations have arisen in other jurisdictions, however, and these rulings afford persuasive precedents.

Carey v. State Farm Mut. Ins. Co., 367 F2d 938 (4th Cir., 1966) involved a similar situation which arose in Virginia. In that case the court, in upholding the coverage as determined by the lower court, stated (pp. 941, 942): "We agree with the District Court in its holding that the Chevrolet was insured under the family policy as an after-acquired automobile. The insurer is bound by the express terms of its contract of insurance. When those terms, taken in their ordinary sense, convey a clear and unambiguous meaning, a court cannot indulge in ferreting out hidden meanings or unexpressed intentions to relieve the insurer of liabilities assumed in the policy. When ambiguities arise, the intent of the parties is controlling; but if any doubt remained it would, under the familiar rule, be resolved in favor of the insured since the insurer formulated the language in the policy. See Imperial Casualty & Indemnity Co. v. Relder, 308 F2d 761 (8th Cir. 1962); 13 Appleman, Insurance Law and Practice § 7482 (1943).

"However, we find no ambiguity. The defendant, in clause (c) .(2), expressly undertook to insure all after-acquired private passenger vehicles of the insured, provided that notice of the acquisition is given within 30 days. Virgil Foster gave the requisite notice when he requested the defendant to transfer the insurance on his old automobile—a Plymouth—to the Chevrolet. The defendant's position that this notice operated either as a waiver or counter-offer is untenable. Frequently, automobile owners are unaware of the extent of coverage provided by their liability policies. Policies are long, detailed, and printed in type so small as to discourage close reading by the ordinary policy holder to determine precisely the coverage provided. It would be un-

reasonable to ascribe to Virgil Foster an intention to waive any additional protection to which he was entitled or to reject it by applying for specific insurance on the Chevrolet. If the defendant intended to insure newly acquired automobiles only as long as no specific insurance was taken out to cover them, it could have stated this expressly. If, as defendant suggests, it is anomalous to have two policies covering the same automobile, specific language obviating this could have been included in the family policy. Indeed, the simple omission of the provision in question would have avoided all question. The provision means what it says.

"Moreover, the inclusion of a further provision for a premium adjustment on the family policy in the event of the acquisition of an additional automobile strongly implies coverage. While no premium adjustment was made on the family policy, the sequence of events from the acquisition of the Chevrolet to the date of the accident took only several weeks. The defendant may well have contemplated a premium adjustment in the future, but delay in billing for any additional premium that it might be entitled to claim would not relieve it from the obligation of its contract. Alternatively, the premium on the family policy may have been computed to reflect the possible acquisition of an additional automobile."

In addition, see St. Paul Mercury Ins. Co. v. Pennsylvania Lumbermen's Mut. Ins. Co., 378 F2d 312 (4th Cir., 1967), involving an incident in South Carolina; Southern Guaranty Ins. Co. v. Wales, 283 Ala. 493 (218 S2d 822) (1969), a decision turning on the failure of the insured to notify the insurer of the acquisition of the vehicle during the policy period in which it was acquired or even after renewal until the insured was involved in an incident while driving the vehicle; Glens Falls Ins. Co. v. Gray, 386 F2d 520 (5th Cir., 1967), an appeal from a decision of the United States District Court for the Northern District of Florida; Indiana Lumbermen's Mut. Ins. Co. v. Russell, 243 La. 189 (142 S2d 391) (1962); Merchants Mut. Ins. Co. v. Standard Accident Ins. Co., 106 N. H. 504 (214 A2d 737)

(1965); Traders & General Ins. Co. v. Mallitz, 315 F2d 171 (5th Cir., 1963), a case on appeal from the United States District Court for the Eastern District of Louisiana; National Union Fire Ins. Co. v. Falciani, 87 N. J. Super. 157 (208 A2d 422) (1965); Horace Mann Mut. Cas. Co. v. Bell, 134 FSupp. 307 (USDC, WD, Ark. 1955); Hughes v. Glens Falls Ins. Co., 15 Ariz. App. 7 (485 P2d 597) (1971); Velkers v. Glens Falls Ins. Co., 93 N. J. Super. 501 (226 A2d 448) (1967).

In the present situation before this court it can hardly be doubted that absent the fact of the Illustrator policy, the automobile coverage provision of the Crusader policy would apply to the newly acquired 1965 Chevrolet pickup truck. While there is evidence that it was not the policy of Allstate to include commercial vehicles under the Crusader policy, and also evidence that Bates purchased the truck intending to use it for business purposes, able counsel for appellee do not direct our attention to anything in the Crusader policy to limit the automatic coverage of additional automobiles in respect to an after-acquired vehicle purchased with the intent of using it for business purposes. And while we agree with counsel for appellee that it was the intent of the parties to provide coverage specifically under the Illustrator policy, we reject the further contention that the coverage under the Illustrator policy eliminated any available coverage under the Crusader policy. There is no ambiguity in the automatic coverage as here applicable under the Crusader policy. It covers "any additional automobile" as an "owned automobile" further defined to include "utility automobile" as one having "a load capacity of 1,500 pounds or less of the pick-up body . . . type" if "notice of its delivery be given to Allstate within the policy term then current." There is no language to discontinue this coverage in the event additional insurance is acquired to cover the vehicle, from Allstate or any other insurer. Just as the court remarked in the Carey case, supra, we think the policy means exactly what it says.

Allstate received notice of the additional vehicle during the policy period, and while the automatic coverage may have entitled Allstate to a premium adjustment, as provided in the policy, the fact that Allstate did not adjust the premium, but instead through its agent accepted an application to cover the vehicle under the Illustrator policy as described vehicle, did not alter the contract already in existence providing for automatic coverage, in the absence of any expressed enforceable agreement in the Crusader policy terminating the automatic coverage or providing for an election, such as that provided in the policies involved in Bramlett v. State Farm Mut. Auto. Ins. Co., 205 Kan. 128 (468 P2d 157) (1970).

Under the situation here disclosed the Crusader policy afforded automatic liability coverage on the 1965 Chevrolet ½-ton pickup truck operated by Bates on September 19, 1968, and the trial judge erred in holding otherwise.

*Judgment reversed. Quillian and Evans, JJ., concur.*