(682 P 2d 689)

No. 55,930

DAVID BEASLEY, *Appellee/Cross-Appellant*, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant/Cross-Appellee.*

Petition for review denied September 6, 1984.

Opinion filed June 21, 1984.

*Jerry G. Elliott,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for appellant/cross-appellee.

*Kelly W. Johnston,* of Johnston & Johnston, P.A., of Wichita, for appellee/cross-appellant.

Before ABBOTT, P.J., MEYER and BRISCOE, JJ.

ABBOTT, J.: This action was brought by the plaintiff, David Beasley, to recover personal injury protection (PIP) benefits under an automobile insurance policy issued by the defendant, State Farm Mutual Automobile Insurance Company (State Farm). The trial court awarded plaintiff PIP benefits in the amount of $6,680.

State Farm's insured, Eddie Benton, was engaged in the trash hauling business. The insured vehicle was a truck with a trash compactor attached to it. The plaintiff was employed by Benton and worked on the trash truck. He was injured when his right arm was caught under the trash compactor lid while it was

completing the packing process. State Farm contended at trial, and now on appeal, that there is no coverage because of the loading-unloading exclusion clause in the insuring agreement. Plaintiff cross-appeals, contending that the exclusion does not apply for various reasons which the trial court either rejected or did not consider.

K.S.A. 40-3108(*b*)(4) of the Automobile Injury Reparations Act permits an insurer to exclude PIP benefits to any person suffering injury if such person "was injured as a result of conduct in the course of loading and unloading a motor vehicle, *unless* the conduct occurred while *occupying,* entering into or alighting from such vehicle." (Emphasis supplied.)

State Farm's policy excluded PIP benefits for "INJURY TO ANY PERSON IF THAT PERSON WAS INJURED AS A RESULT OF CONDUCT WHILE LOADING OR UNLOADING A MOTOR VEHICLE. This item does not apply if the conduct occurred while *occupying* the *motor vehicle.*"

The policy defines "occupying" as "mean[ing] in, on, entering or alighting from." The parties acknowledge that policy language can liberalize coverage, but cannot diminish coverage required by the act.

The trial court found that plaintiff was injured while loading the insured vehicle. Plaintiff, in his cross-appeal, contends that was error.

This case was submitted to the trial court on a stipulated set of facts from which it appears that the plaintiff stipulated the loading process had not been completed when he was injured. In any event, substantial competent evidence is in the stipulation to support the trial judge's finding that the loading process was occurring at the time the accident happened. The stipulated facts have convinced us to reach the same conclusion.

The trial judge found the exclusion did not apply because plaintiff was "occupying" the vehicle when the accident occurred. The trial judge stated that by plaintiff's having been caught *in* the compactor, he was occupying the vehicle when the injury occurred. A motion to reconsider was filed and the trial judge overruled the motion, stating that plaintiff "was occupying the insured vehicle at the time or immediately prior to the accident because his arm was within the [compactor]."

State Farm makes much of the trial judge's language in his

ruling on the motion for a new trial. We do not consider it a deviation from his original judgment. The words "or immediately prior to the accident" mean to us that plaintiff's arm was inside the trash compactor prior to the accident in issue. Obviously his arm had to be there immediately prior to its being caught by the compactor or the accident would not have happened. The words may be redundant, but they are not inconsistent because plaintiff's arm must have been in the compactor when the injury occurred. Perhaps we are splitting hairs with counsel's argument, but the record does not tell us how or why plaintiff's arm was in the compactor when the injury occurred and, in our opinion, the question before us does not change as a result of the additional language by the judge.

Plaintiff stipulated that:

"Plaintiff denies touching the truck with either his leg or hand at the time the lid began coming down. . . . Plaintiff testified he was standing next to the back end of the truck, with his right arm hanging normally from his side. His right arm was not extended, he wasn't sticking it out, and he wasn't reaching for anything inside the truck. The first knowledge he had of the lid hitting him was when it had actually pinned his wrist to the floor of the truck."

The facts remain that plaintiff was engaged in the loading process when his wrist was caught, for whatever reason, under the lid of the trash compactor. Thus, plaintiff's arm was physically within the compactor when the injury occurred and we must determine whether that fact alone is sufficient to make the loading-unloading exclusion inapplicable.

The word "occupying" has many meanings. Literally, occupying requires possession, whether it be possession of real estate or personal property, or merely possession of another's time or of space in another's vehicle. In the absence of a statutory definition, the context in which it is used is significant in determining legislative intent.

Insuring agreements have for many years defined "occupying" in much the same language that is used by State Farm in this case, although many of the policies use "upon" rather than "on." That is of no real consequence since the two words mean essentially the same. Webster's Third New International Dictionary 2517 (3d ed. 1976) defines "upon" by reference to the word "on." "On" is defined as a position of contact with or against a supporting surface, or a motion into or toward such position. Webster's 1575.

We are of the opinion that the policy issued by State Farm in this case does not restrict or delete the coverage mandated by the Automobile Injury Reparations Act, nor is it in derogation of K.S.A. 40-3108. We need not decide whether State Farm's policy in this case is more liberal than is required by statute, for that issue is not before us and is of no moment in this appeal.

The general rules for construing insurance contracts are well established and need not be repeated here. "In" and "on" are simple words, but the variety of situations they define is broad. Courts have had considerable difficulty applying them to insurance clauses similar to the one at issue here. When we consider the trouble the appellate courts of the various states have had in applying the word "occupying" as defined in the standard policies, we conclude it is an ambiguous provision.

In *Saint Paul-Mercury Ind. Co. v. Broyles,* 230 Miss. 45, 49, 92 So. 2d 252 (1957), the Mississippi Supreme Court considered a similar clause in an insurance policy and held that "because of the nature of this clause and its necessarily close connection with the facts of each case, it is apparent that no general rule of interpretation can be formulated *in vacuo.* The facts of each case must necessarily determine the result." We agree. No hard and fast rule can be stated.

In the case at bar, at the time plaintiff was injured he was partially within the insured vehicle which was being used for the purpose for which it was intended and which was stated in the insuring agreement.

In Widiss, A Guide to Uninsured Motorist Coverage § 2.11 (1981 Supp.), Professor Widiss tells us that the scope afforded by defining "occupying" as "in or upon or entering or alighting from" is quite broad. He states:

"The recent appellate opinions dealing with the endorsement provision that defines 'occupying' to mean 'in or upon or entering into or alighting from' an insured vehicle provide a spectrum of factual situations where claimants were injured after alighting from an insured vehicle.

"One end of the spectrum of such cases involves situations where it is clear that the claimant was in the process of entering into or alighting from an insured vehicle. For example, there are a number of cases like the New York decision where the claimant was allowed to recover when he was injured while he stood beside a taxi to pay the driver. Similarly, courts have observed that coverage clearly existed for claimants who were injured by an uninsured motorist when they were unlocking the door of a parked car or lying on a fender of a parked car to work on the fuel pump—that is where the parked vehicles were insured cars.

"Other cases, however, involve fact patterns where there is a more substantial issue over whether the claimant was still technically 'upon or entering into or alighting from' an insured vehicle. Among these are (1) a New York decision where the court allowed a recovery by a passenger who was struck by a hit-and-run driver 'four or five seconds after alighting' as he walked towards the front of the stalled truck he had been riding in; (2) a Louisiana decision approving a recovery by a deputy sheriff (under an endorsement providing coverage for occupants of the sheriff's vehicle) who was standing between the sheriff's vehicle and a stalled car in order to attach a pair of jumper cables when an uninsured motorist ran into the back of the stalled automobile and thereby pinned the deputy between the two parked cars; (3) an Illinois decision holding 'an ambiguity exists with respect to the precise meaning of the word "alighting" ' so that the court concluded that it could not say 'the alighting had been completed' by a claimant who had been sitting on the fender of the insured vehicle, but had jumped off and taken a step or two to get out of the way prior to being struck from behind by the uninsured vehicle; (4) a Wisconsin decision allowing recovery where the insured was pinned between two cars while standing between the vehicles—holding a spare tire that was intended to protect the bumpers of the cars when the second car was going to be used to push the first car—when the rear car was struck by an uninsured motorist; and (5) a California decision which extended protection to a claimant who was injured by an uninsured motorist while he was standing one to four feet away from the insured vehicle preparing to put on snow chains. In the California case, the court viewed the 'preparations for affixing the snow chains' as placing the claimant 'in the requisite physical relationship to the car' so as to bring him within the protection afforded to those who are 'upon' an insured vehicle. Similarly, a New York court found that coverage existed in a situation where the claimant was driving one of two vehicles being taken to the same destination and was injured by an uninsured driver of a third automobile when the claimant was walking from the lead vehicle to the second vehicle to give the registration papers to the other driver (after they had just changed driving places). In this case, both vehicles were insured with policies that included uninsured motorist endorsements, and the claim was allowed against the insurer of the second vehicle even though the claimant had never occupied or driven that vehicle in the course of the trip prior to the accident. The court reasoned 'that the claimant had sufficiently made out her connection with  .  .  .  [that] car to establish her status as a passenger in that car.  .  .  .' Finally, the Supreme Court of South Carolina allowed the claim of a passenger who was proceeding away from the parked insured vehicle on foot in an attempt to avoid being hit by an oncoming automobile. The South Carolina court concluded the claimant was 'alighting from' the insured vehicle.

"Taken together, these opinions seem to be defining coverage either in terms of a reasonable geographic perimeter around an insured vehicle, or a kind of relationship between the vehicle and the claimant—such that so long as the drivers or passengers are within that area or engaged in a task related to the operation of the vehicle they are within the scope of the coverage. Furthermore, viewed as a group, these decisions also continue to buttress the conclusion that the courts liberally construe the endorsement whenever possible so as to provide coverage."

See also Woodroof, Fonseca & Squillante, Automobile Insurance and No-Fault Law §§ 5:12, 5:13 (1983 Supp.).

"Upon" is not construed literally by the courts, and mere physical contact with the insured vehicle prior to the accident, while not mandatory, is generally held to be sufficient. See, *e.g.*, *Wolf v. American Casualty Co.*, 2 Ill. App. 2d 124, 118 N.E.2d 777 (1954) (standing in front of insured vehicle when it was struck by another vehicle); *Henderson v. Hawkeye-Security Ins. Co.*, 252 Iowa 97, 106 N.W.2d 86 (1960) (struck by a vehicle while leaning against the insured vehicle); *Hendricks v. American Employers Insurance Co.*, 176 So. 2d 827 (La. App.), *rehearing denied* 248 La. 415, 179 So. 2d 15 (1965); *Lokos v. New Amsterdam Cas. Co.*, 197 Misc. 40, 93 N.Y.S.2d 825 (1949), *aff'd* 197 Misc. 43, 96 N.Y.S.2d 153 (1950) (tying on a loose bumper); *Madden v. Automobile Ins. Co.*, 82 Ohio App. 111, 79 N.E.2d 586 (1948) (some inference of touching—clearly had upper body and hands and arms inside the rear compartment); *Young v. State Auto Insurance Assn.*, 1 Lycoming C. 191, 72 Pa. D. & C. 394 (1949); *Sherman v. New York Casualty Co.*, 78 R.I. 393, 82 A.2d 839 (1951), 39 A.L.R.2d 947 (placing hands on vehicle to stop it from rolling); *McAbee v. Nationwide Mutual Ins. Co.*, 249 S.C. 96, 152 S.E.2d 731 (1967) (crushed between two vehicles while pushing the insured vehicle).

We conclude that under the facts of this case the plaintiff was in and on the insured vehicle within the meaning of the loading-unloading exclusion clause when the injury accidently occurred; and having reached the same conclusion as the trial judge, we find no error. Our having so held, the remainder of plaintiff's cross-appeal is moot.

Affirmed.