(808 P.2d 911)

No: 65,367

NORTHERN ASSURANCE COMPANY OF AMERICA, *Appellant,* v. FARM
BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellee.*

Opinion filed April 5, 1991.

*James T. McIntyre*, of McMaster & McMaster, of Wichita, for appellant.

*Don D. Gribble, II*, of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, for appellee.

Before BRISCOE, C.J., BRAZIL and ELLIOTT, JJ.

BRAZIL, J.: Northern Assurance Company of America (Northern) appeals from the judgment of the trial court denying its petition for pro rata contribution from Farm Bureau Mutual Insurance Company, Inc., (FBM) based on the newly acquired vehicle coverage clause in policies FBM issued to Theodore and Laura Carlson. We reverse and remand with directions.

This case was tried on stipulated facts which established that on April 6 and 7, 1988, FBM insured three vehicles jointly owned by Theodore M. Carlson and his wife, Laura. FBM also insured a fourth vehicle jointly owned by Laura Carlson and her daughter, Rhonda. The Carlsons owned no other vehicles on April 6, 1988, and FBM stipulated that it insured all vehicles which the Carlsons owned on that date. Each of the four FBM policies covering these vehicles provided the named insured with the statutory minimum of liability coverage, $25,000.

On April 7, 1988, the Carlsons purchased a 1983 Pontiac, and Laura Carlson inquired of FBM whether the vehicle was automatically covered for 30 days under the newly acquired vehicle provision in the FBM policies. She was not satisfied with FBM's response, so Theodore and Laura purchased $100,000 liability coverage on the Pontiac on the same day through Northern's property and casualty insurer, Commercial Union Insurance Company. The record does not indicate what FBM's response was or why Laura was unsatisfied. Northern issued a written binder

evidencing the coverage which became effective at 12:01 a.m. on April 7, 1988, and later issued a policy. FBM never billed the Carlsons for any additional premium on the Pontiac nor did the Carlsons ever pay FBM any additional premium.

The next day, April 8, 1988, Theodore was driving the Pontiac and was involved in an accident with a motorcycle which resulted in the death of the motorcyclist. Both Northern and FBM were notified of the accident, and each insurer conducted an investigation. FBM concluded that none of its policies provided any coverage for the accident, and it refused to participate in the adjustment, settlement, or defense of any claims. Northern settled all claims for $59,617.95.

After a bench trial, the court granted judgment for FBM, finding there was no coverage under its policies. The trial judge, citing *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 468 P.2d 157 (1970), stated that the purpose of the clause was to "provide temporary coverage until some specific arrangement was made." He concluded that the Carlsons' act of purchasing the Northern policy constituted a specific arrangement, thus terminating coverage under the FBM policies.

This court's scope of review is clear. Appeals from a decision of a district court based on stipulated facts and written and documentary evidence are subject to de novo review because the appellate court has the same opportunity as the district court to examine and consider the evidence. *In re Estate of Moe*, 11 Kan. App. 2d 244, 246, 719 P.2d 7, *rev'd on other grounds* 240 Kan. 242, 729 P.2d 447 (1986). This court is not bound by the trial court's construction of the FBM policy because the contract can be construed and its legal effect determined by the appellate court. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987); *Cornwell v. Jespersen*, 238 Kan. 110, 116, 708 P.2d 515 (1985).

1. Coverage Under FBM's Newly Acquired Vehicle Clauses.

Each of the FBM policies at issue in this case insures the vehicle described in the policy declarations as well as "any additional **vehicle** of which **you** [the named insured] acquire ownership or lease during the policy period if **we** [FBM] insure all **vehicles** which **you own or lease. You** must, however, notify **us**

within 30 days of its acquisition and pay any additional premium required." If the Pontiac is considered a newly acquired vehicle as defined in the FBM policies, coverage is provided for this accident.

The majority of courts interpreting the automatic insurance clause in automobile policies generally agree that coverage *automatically* applies to the newly acquired vehicle for accidents occurring within the designated notice period regardless of whether the insurer has received the notice at the time of loss. The giving of notice within the specified period is not a condition precedent to automatic coverage but is instead a condition subsequent to extending coverage beyond the notice period. See *Consumers United Ins. Co. v. Johnson,* 26 Wash. App. 795, 798, 614 P.2d 657 (1980), and cases cited therein. Likewise, the payment of any premium differential resulting from the acquisition of a new vehicle is generally not a condition precedent to coverage under such clauses. See *Gorling v. Allstate Insurance Co.,* 125 Ga. App. 497, 500, 188 S.E.2d 128 (1972); *Merchants Mutual &c. Co. v. Lambert,* 90 N.H. 507, 510-11, 11 A.2d 361 (1940); *Johnson,* 26 Wash. App. at 798-800; 12 Couch on Insurance 2d § 45:196 (rev. ed. 1981) Annot., 39 A.L.R.4th 312.

The well-known general rules of construction for insurance policies provide:

" 'In construing an insurance policy a court should consider the instrument as a whole and endeavor to ascertain the intention of the parties from the language used, taking into account the situation of the parties, the nature of the subject matter and the purpose to be accomplished. . . .

" ' . . . If . . . the contract is clear and unambiguous, the words are to be taken and understood in their plain, ordinary and popular sense, and there is no need for judicial interpretation or the application of rules of liberal construction; the court's function is to enforce the contract according to its terms. . . .' [Citation omitted.]

" 'When an insurance contract is not ambiguous, the court may not make another contract for the parties. Its function is to enforce the contract as made.' " *Mah v. United States Fire Ins. Co.,* 218 Kan. 583, 586-87, 545 P.2d 366 (1976).

Northern argues that the policies at issue in this case unambiguously provided coverage for the Pontiac at the instant it was purchased, and nothing in the FBM policy language quoted above

prevents the insured from obtaining other coverage. Northern asserts that the policy language must be interpreted from the viewpoint of a reasonable insured; and, under such a construction, once coverage has attached under the newly acquired vehicle clause, the insured would expect coverage to continue for at least 30 days, regardless of whether the insured purchased additional or different coverage.

FBM argues that Northern's interpretation overlooks the most fundamental rule of contract construction, that of construing the policy to give effect to the intentions of the parties; in this case, the parties only intended FBM to provide coverage until the Carlsons purchased other coverage on the Pontiac. FBM raises three points it alleges illustrate the intent of the parties in this case: (1) The Carlsons obtained coverage for the Pontiac through Northern, which shows their intent to insure the vehicle with Northern alone; (2) since the Carlsons made no arrangements for premium payments to FBM on the Pontiac, their actions show they had no intent for FBM to insure the vehicle; and (3) Theodore Carlson notified the police officer investigating the accident that Commercial Union a/k/a/ Northern was the liability carrier for the Pontiac, which shows there was no intent for FBM to cover the vehicle.

The parties in this case obviously disagree on which rules of insurance contract construction apply and the order of the application of those rules to the policies involved. At issue is how long coverage continued under the newly acquired vehicle clauses of the FBM policies. In other words, did coverage under these clauses terminate at the instant the Carlsons obtained the binder from Northern?

Insurance authorities are generally in accord that the newly acquired coverage clause is offered as a convenience to the insured, and its purpose is to broaden the coverage available under an automobile insurance policy to provide protection at the earliest possible time needed by the insured. See 6B Appleman, Insurance Law and Practice § 4293 (Buckley ed. 1979); 12 Couch on Insurance 2d § 45.184 (rev. ed. 1981). The Kansas Supreme Court recognized similar statements of the purpose of such clauses in *Bramlett v. State Farm Mutual Ins. Co.* and also quoted 7 Blashfield, Automobile Law and Practice § 316.3 (3d ed. 1966)

as authority for the proposition that " '[o]nce specific insurance is purchased and the automobile becomes described in the policy, it is no longer a "newly acquired automobile" but is a "described automobile" and the terms and provisions under the "automatic insurance" . . . clause are no longer applicable.' " 205 Kan. at 130.

The arguments of the parties in this case mirror those before the Kansas Supreme Court in *Bramlett*. State Farm Mutual Insurance Company (State Farm) insured Robert Bramlett's two vehicles under separate policies. Bramlett's daughter, Carol, was a named insured under her father's policies. On December 20, 1965, Carol purchased a new vehicle and insured it under a separate State Farm policy purchased on the same day. Three months later, Carol was injured in an accident while riding as a passenger in the new vehicle and incurred medical expenses. Carol claimed reimbursement under the medical payment coverage provision in her policy, as well as both of her father's policies. State Farm paid its policy limits under Carol's policy, but her damages exceeded the amount of State Farm's payment. Carol and her father then sued State Farm for the balance of her medical expenses and for attorney fees. 205 Kan. at 129.

Carol's argument for coverage under her father's policies was based on the newly acquired vehicle clause (also known as the automatic insurance clause) which provided:

" 'Newly Acquired Automobile—means an automobile, ownership of which is acquired by the named insured or his spouse, if a resident of the same household, if (1) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (2) the named insured within 30 days following such delivery date applies to the company for insurance on such newly acquired automobile. *If more than one policy issued by the company could be applied to such automobile the named insured shall elect which policy shall apply.* The named insured shall pay any additional premium required because of the application of the insurance to such newly acquired automobile.' (Emphasis supplied.)" 205 Kan. at 130.

State Farm argued that no coverage was available because the purpose of the clause was to grant 30 days of interim coverage on a newly acquired vehicle, which allowed the insured a reasonable opportunity to acquire the specific coverage desired on the new vehicle; once the insured purchased such coverage, the

newly acquired vehicle provision no longer applied. The Kansas Supreme Court agreed with State Farm's interpretation of the clause. 205 Kan. at 130, 132.

In this case, unlike *Bramlett*, the accident occurred during the time in which any coverage provided under the newly acquired vehicle clause would have been in effect (*i.e.*, within 30 days of the acquisition of the vehicle). Here, the accident occurred the day after the Carlsons purchased the new vehicle and notified FBM of the acquisition. In *Bramlett*, the accident occurred three months after the new vehicle was acquired and separately insured through State Farm under a different policy. 205 Kan. at 129.

Also, in *Bramlett*, the insured purchased specific coverage from State Farm, the same insurer that provided the newly acquired vehicle coverage. Arguably, the purchase of specific coverage through the same insurer supports a presumption that the insured intended to have coverage under the specific policy rather than under the newly acquired coverage clause. Furthermore, the newly acquired vehicle provision in *Bramlett* contained the following language: " *'If more than one policy issued by the company could be applied to such automobile the named insured shall elect which policy shall apply.'* " 205 Kan. at 130 No. such anti-stacking language appears in the FBM policies.

The specific language in *Bramlett* that FBM relies on, and that the district court apparently construed to be "public policy," states:

"The purpose of the 'automatic insurance clause' or 'newly acquired automobile clause' in an automobile policy is to provide insurance coverage when an owned automobile is not described in a policy. When specific insurance is purchased and a separate policy is issued on the automobile it becomes an automobile described in a new policy and it is no longer a 'newly acquired automobile.' At that time the terms and provisions of the 'automatic insurance clause' or 'newly acquired automobile clause' are no longer applicable to the automobile." 205 Kan. at 132.

This language is virtually a verbatim quote of the reasoning of *Cook v. Surburban Cas. Co.*, 54 Ill. App. 2d 190, 203 N.E.2d 748 (1964), a case which is quoted in *Bramlett*. 205 Kan. at 131. The problem with construing this language as "public policy" is that the rationale in *Cook* was based on policy definitions of an "owned automobile" and a "described automobile," which were

at issue in the *Cook* case. In that case, the accident vehicle was a vehicle "described in the policy" issued by Suburban Casualty and therefore could not be considered a "newly acquired automobile" within the meaning of the Suburban Casualty policy. See *Cook*, 54 Ill. App. 2d at 195-96. However, the instant case involves different considerations since the Pontiac at issue in no way can be considered a vehicle described in an FBM policy. Although the Pontiac was a vehicle described in a policy issued by Northern, the FBM policies do not contain any exclusion or limitation of coverage under the newly acquired vehicle clause for such a contingency.

Under the plain language of the FBM policies at issue in this case, there is coverage for the Carlsons' Pontiac. Therefore, FBM's arguments regarding the intent of the parties are irrelevant. As noted above, courts called on to construe insurance contracts cannot make a new contract for the parties; if the policy language is unambiguous the court must enforce the contract as made. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. at 713; *Merritt v. Farmers Ins. Co.*, 7 Kan. App. 2d 705, 708, 647 P.2d 1355 (1982).

To adopt FBM's construction of the policy language would be to read into the policy words which do not there appear. FBM could have easily added an additional condition under the newly acquired coverage clause stating something to the effect that "coverage under this provision terminates once coverage attaches to the newly acquired vehicle under a binder or policy issued by this or any other insurer," but FBM did not do so. Furthermore, FBM's suggested construction would have the effect of reading into the policies a *limitation* of the coverage provided under the newly acquired vehicle clauses. Many times the appellate courts of this state have said that coverage clauses in automobile insurance policies are to be liberally construed in favor of coverage; when an insurer intends to exclude, limit, or reduce the coverage available, it must use language clearly revealing its stated purpose. *Central Security Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 334, 681 P.2d 15 (1984); *Krug v. Millers' Mutual Insurance Ass'n.*, 209 Kan. 111, Syl. ¶ 2, 495 P.2d 949 (1972); *Beasley v. State Farm Mut. Auto. Ins. Co.*, 9 Kan. App. 2d 561, Syl. ¶ 1, 682 P.2d 689, *rev. denied* 236 Kan. 875 (1984); *United States Fidelity*

*& Guar. Co. v. Farm Bureau Mut. Ins. Co.*, 2 Kan. App. 2d 580, Syl. ¶ 1, 584 P.2d 1264 (1978).

"[T]he test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.*, 215 Kan. 937, Syl. ¶ 7, 529 P.2d 171 (1974)." *Farm Bureau Mut. Ins. Co. v. Winters*, 248 Kan. 295, 300, 806 P.2d 993 (1991).

The language used in the FBM policies does not limit or terminate coverage for a newly acquired vehicle for accidents occurring during the designated notice period merely because the insured has purchased other coverage through a different insurer. The trial court's decision must be reversed.

2. FBM's Pro Rata Share.

Because the Pontiac was a newly acquired vehicle under the FBM policies, each of the Carlsons' four previously owned policies would provide coverage. However, the amount of liability coverage is limited to the $25,000 limits of a single FBM policy. The pertinent policy provisions provide: "If two or more **vehicle** liability policies apply to the same accident, the total limits of liability under all such policies shall not exceed that of the policy with the highest limit of liability." "If there is ·other applicable liability insurance on a **loss** covered by this Part, **we** will pay **our** proportionate share as **our** limits of liability bear to the total of all applicable liability limits."

The collision sections of the policies contain the following "Other Insurance" provision: "If there is other applicable similar insurance on a **loss** covered by this Part, **we** will pay only that proportion of the **loss** that **our** limit of liability bears to the total limits of all applicable similar insurance." The Northern policy contains virtually identical provisions.

Northern paid $54,858.50 under the liability section of its policy and $1,812.10 under the physical damage coverage. It incurred adjustment expenses of $2,947.35. The parties stipulated that the settlement and all adjustment expenses were fair and reasonable. The total applicable liability limits under the four FBM policies and the Northern policy is $200,000 ([4 × $25,000] + $100,000

= \$200,000). The FBM policies provided \$100,000 of this coverage, 50 percent of the total applicable policy limits. Fifty percent of the liability exposure is \$27,429.25, but FBM's liability payment is limited to its highest liability limit under any of its policies, \$25,000.

The adjustment expenses were \$2,947.35, and FBM's share would be 50 percent of that amount or \$1,473.67. Collision damages were \$1,812.10; FBM's share is \$906.05. Thus, Northern is entitled to recover the amount of \$27,379.72 from FBM.

The decision of the trial court is reversed and the case is remanded with instructions to enter judgment for Northern for \$27,379.72.

ELLIOTT, J., dissenting: Unlike the majority, I cannot distinguish *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 468 P.2d 157 (1970). To me, it is insignificant that the accident occurred within 30 days of the acquisition of the Pontiac; it is equally insignificant that the Carlsons purchased insurance coverage with a company other than Farm Bureau.

What is significant to me is the undisputed fact that, for whatever reason, the Carlsons *did* obtain specific insurance coverage on the Pontiac. The teaching of *Bramlett* is clear:

"The purpose of the 'automatic insurance clause' or 'newly acquired automobile clause' in an automobile policy is to provide insurance coverage when an owned automobile is not described in *a* policy. When *specific insurance* is purchased and a separate policy is issued on the automobile it becomes an automobile described in *a new policy* and it is no longer a 'newly acquired automobile.' At that time the terms and provisions of the 'automatic insurance clause' or 'newly acquired automobile clause' are no longer applicable to the automobile." 205 Kan. at 132. (Emphasis added.)

*Bramlett* simply places no significance on when or with whom the specific insurance coverage is acquired. In the present case, when the Carlsons purchased specific insurance coverage for the Pontiac, coverage under the terms and provisions of the "newly acquired vehicle clauses" of the Farm Bureau policies terminated and is, therefore, no longer applicable to the Pontiac.

I would affirm.