No. 65,367

NORTHERN ASSURANCE COMPANY OF AMERICA, *Appellant,* v. FARM
BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellee.*

(822 P.2d 45)

Opinion filed December 6, 1991.

*James T. McIntyre,* of McMaster & McMaster, of Wichita, argued the cause and was on the brief for appellant.

*Don D. Gribble II,* of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This is a contract case involving the interpretation of the newly acquired vehicle clause of an automobile insurance policy. The dispute is between two insurance companies, each with its differing view of our holding in *Bramlett v. State Farm Mutual Ins. Co.,* 205 Kan. 128, 468 P.2d 157 (1970).

Jurisdiction is under our grant of the Farm Bureau Mutual Insurance Company, Inc., (FBM) petition for review of a divided judgment of the Court of Appeals, *Northern Assur. Co. of Amer-*

*ica v. Farm Bur. Mut. Ins. Co.*, 15 Kan. App. 2d 455, 808 P.2d 911 (1991).

Northern Assurance Company of America (Northern) appeals from an order of the trial court denying Northern's claim for pro rata contribution from FBM based on the newly acquired vehicle coverage clause in policies FBM issued to Theodore and Laura Carlson (the Carlsons).

The issue is whether *Bramlett* controls, placing responsibility for coverage entirely on Northern or whether *Bramlett* is to be distinguished, requiring FBM coverage and pro rata payment.

### Facts

The parties stipulated to the facts.

On April 6, 7, and 8, 1988, FBM insured three vehicles jointly owned by the Carlsons. FBM also insured a 1978 Ford jointly owned by Laura and her daughter. FBM insured all vehicles owned by the Carlsons on April 6, 1988. Each of the four FBM policies provided the named insured with the $25,000 statutory minimum of liability coverage.

On April 7, 1988, Laura notified FBM that the Carlsons were purchasing another car and inquired whether there would be 30 days' coverage for the new car with FBM.

Laura was not satisfied with the FBM answer regarding coverage. On April 7, 1988, the day the Carlsons purchased their new car, a 1983 Pontiac Parisienne, they contracted with Northern for insurance on the Pontiac. A binder was issued listing Theodore Carlson as the named insured and describing the 1983 Pontiac as the vehicle.

Within 30 days of the purchase, FBM had notice of the acquisition of the Pontiac. FBM forwarded no notice, demand, or statement to the Carlsons indicating a requirement of an additional premium. The Carlsons paid no additional premium to FBM for the Pontiac.

On April 7 and 8, 1988, a contract for insurance affording liability coverage to Theodore in the amount of $100,000 was in effect with Northern. The vehicle described in the contract was the Pontiac.

Northern's policy provides the following: "If there is other applicable liability insurance we will pay only our share of the

loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."

On April 8, 1988, while operating the Pontiac, Theodore was involved in an automobile-motorcycle accident. The cyclist sustained fatal injuries. Northern and FBM were notified and conducted investigations with respect to the accident.

Northern made a demand on FBM to participate in the settlement or defense of any claims arising out of the injuries and death of the cyclist. FBM refused.

Northern filed this action based on the FBM policies, alleging entitlement to pro rata contribution from FBM. FBM denied coverage, contending that the Pontiac was no longer a newly acquired vehicle at the time of the accident. Under the FBM polices, the Pontiac was insured by Northern and, consequently, was an insured vehicle under the Northern policy.

## The Trial Court's Ruling

The trial court reasoned in granting judgment for FBM that the purpose of the newly acquired vehicle clause in the FBM policies was to "provide temporary coverage until some specific arrangement was made." The Carlsons' purchase of the Northern policy constituted a specific arrangement; thus, coverage under the FBM policies was terminated. The trial court concluded that *Bramlett* controlled.

## Northern's Contentions

Northern contends the FBM policies provided coverage for the Pontiac. According to Northern, there is no language in the FBM policies that would suggest to an insured that purchase of additional coverage from another company would terminate coverage under FBM's newly acquired vehicle clause. Northern reasons that FBM is obligated to pay 50 percent of Northern's settlement costs and expenses.

Northern argues that: (1) the FBM policies unambiguously provided coverage for the Pontiac at the instant it was purchased; (2) nothing in the FBM policy language prevents the insured from obtaining other coverage; (3) the policy language must be interpreted from the viewpoint of a reasonable insured; and (4) under the reasonable insured construction, once coverage has attached under the newly acquired vehicle clause, the insured

would expect FBM coverage to continue for at least 30 days, regardless of whether the insured purchased additional or different coverage.

## FBM's Contentions

FBM contends the purpose of the newly acquired vehicle clause in the FBM policy was to provide coverage until the Carlsons obtained specific coverage on the Pontiac.

FBM reasons that Northern's interpretation of the FBM policy language overlooks the intentions of the parties. FBM asserts that the parties only intended FBM to provide coverage until the Carlsons purchased other coverage on the Pontiac. FBM identifies three signs of the Carlsons' intent not to insure with FBM: (1) The Carlsons' obtaining coverage from Northern demonstrates their intent to insure the Pontiac with Northern alone; (2) no premium payments were made to FBM for coverage on the Pontiac; and (3) Theodore notified the police officer investigating the accident that Commercial Union, a/k/a Northern, was the liability carrier for the Pontiac.

## Standard of Review

Our standard of review is de novo. The case is submitted on stipulated facts and documentary evidence, and we are not bound by the trial court's construction of the FBM policy. We may construe the insurance contract and determine its legal effect. *Patrons Mut. Ins. Ass'n v. Harmon*, 240 Kan. 707, 713, 732 P.2d 741 (1987).

## The FBM Policy Language

Each of the FBM policies insures the vehicle described in the policy declarations as well as "any additional vehicle of which you [the named insured] acquire ownership or lease during the policy period if we [FBM] insured all vehicles which you own or lease. You must, however, notify us within 30 days of its acquisition and pay any additional premium required."

"You" as defined in the FBM policies means "the policyholder named in the declarations and spouse if living in the same household." If the Pontiac is a newly acquired vehicle, as the Court of Appeals determined, FBM must provide coverage.

In *Mah v. United States Fire Ins. Co.*, 218 Kan. 583, 586-87, 545 P.2d 366 (1976), we stated the rules of construction for in-

surance policies. The application of the *Mah* rules of construction leads us to conclude that the FBM newly acquired coverage clause is offered as a convenience to the insured. A purpose of the clause is to broaden the coverage available in order to provide protection at the earliest possible time needed by the insured. 12 Couch on Insurance 2d § 45.184 (rev. ed. 1981). Where specific insurance is purchased and a separate policy is issued on an undescribed vehicle, the vehicle is no longer a newly acquired vehicle under the old policy. 12 Couch on Insurance 2d § 45.192 (rev. ed. 1981); 6B Appleman, Insurance Law and Practice § 4293 (Buckley ed. 1979); Annot., 39 A.L.R.4th 229.

We have previously reviewed a similar issue in *Bramlett*. In *Bramlett*, we cited 7 Blashfield, Automobile Law and Practice § 316.3 (3d ed. 1966), as authority for the proposition that " ' "[o]nce specific insurance is purchased and the automobile becomes described in the policy, it is no longer a 'newly-acquired automobile' but is a 'described automobile' and the terms and provisions under the 'automatic insurance' . . . clause are no longer applicable." ' " 205 Kan. at 130.

The Court of Appeals, in reversing the trial court in the case at bar, reasoned:

"Under the plain language of the FBM policies at issue in this case, there is coverage for the Carlsons' Pontiac. Therefore, FBM's arguments regarding the intent of the parties are irrelevant. . . .

"To adopt FBM's construction of the policy language would be to read into the policy words which do not there appear. FBM could have easily added an additional condition under the newly acquired coverage clause stating something to the effect that 'coverage under this provision terminates once coverage attaches to the newly acquired vehicle under a binder or policy issued by this or any other insurer.' " 15 Kan. App. 2d at 462.

*Bramlett* was distinguished by the Court of Appeals and, consequently, was held not to control the case at bar. Three factual distinctions between *Bramlett* and the case at bar were noted: (1) the time of the accident; (2) the purchase of the new policy from a different carrier; and (3) the absence of what was characterized as anti-stacking language in the FBM policy. The *Bramlett* distinctions were described by the Court of Appeals:

"In this case, unlike *Bramlett*, the accident occurred during the time in which any coverage provided under the newly acquired vehicle clause would have been in effect (*i.e.*, within 30 days of the acquisition of the vehicle).

Here, the accident occurred the day after the Carlsons purchased the new vehicle and notified FBM of the acquisition. In *Bramlett*, the accident occurred three months after the new vehicle was acquired and separately insured through State Farm under a different policy. 205 Kan. at 129.

"Also, in *Bramlett*, the insured purchased specific coverage from State Farm, the same insurer that provided the newly acquired vehicle coverage. Arguably, the purchase of specific coverage through the same insurer supports a presumption that the insured intended to have coverage under the specific policy rather than under the newly acquired coverage clause. Furthermore, the newly acquired vehicle provision in *Bramlett* contained the following language: " '*If more than one policy issued by the company could be applied to such automobile the named insured shall elect which policy shall apply.*' " 205 Kan. at 130. No such anti-stacking language appears in the FBM policies." 15 Kan. App. 2d at 461.

*Bramlett*, a 1970 opinion, controls.

We agree with the rationale expressed by the dissent in the Court of Appeals' opinion:

"Unlike the majority, I cannot distinguish *Bramlett v. State Farm Mutual Ins. Co.*, 205 Kan. 128, 468 P.2d 157 (1970). To me, it is insignificant that the accident occurred within 30 days of the acquisition of the Pontiac; it is equally insignificant that the Carlsons purchased insurance coverage with a company other than Farm Bureau.

"What is significant to me is the undisputed fact that, for whatever reason, the Carlsons *did* obtain specific insurance coverage on the Pontiac. The teaching of *Bramlett* is clear:

'The purpose of the "automatic insurance clause" or "newly acquired automobile clause" in an automobile policy is to provide insurance coverage when an owned automobile is not described in *a* policy. When *specific insurance* is purchased and a separate policy is issued on the automobile it becomes an automobile described in *a new policy* and it is no longer a "newly acquired automobile." At that time the terms and provisions of the "automatic insurance clause" or "newly acquired automobile clause" are no longer applicable to the automobile.' 205 Kan. at 132. (Emphasis added.)

"*Bramlett* simply places no significance on when or with whom the specific insurance coverage is acquired. In the present case, when the Carlsons purchased specific insurance coverage for the Pontiac, coverage under the terms and provisions of the 'newly acquired vehicle clauses' of the Farm Bureau policies terminated and is, therefore, no longer applicable to the Pontiac." 15 Kan. App. 2d at 464 (Elliott, J., dissenting).

We reverse the Court of Appeals and affirm the trial court.