No. 46,932

RONALD BROOKS, by Doyle D. Brooks, His Natural Guardian, Father and Next Friend, *Appellant,* v. BILLY D. LINK, *Defendant,* v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellee,* and SHIRLEY M. MARSH and WILLIAM LINK, *Plaintiffs,* v. STATE FARM MUTUAL AUTO INSURANCE COMPANY, *Appellee.*

(512 P. 2d 374)

Opinion filed July 14, 1973.

*Charles L. Davis, Jr.,* of Topeka, argued the cause, and *Michael J. Unrein,* of Topeka, was with him on the brief for the appellant.

*James E. Benfer,* of Fisher and Benfer, of Topeka, argued the cause, and *Charles S. Fisher, Jr.,* and *Robert D. Ochs,* of the same firm, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This appeal involves two cases which were consolidated for purposes of trial in the district court. Both cases arose out of a collision between an automobile and a bicycle on June 4, 1967. The automobile, a 1963 Plymouth, was driven by the defendant-appellant, Billy D. Link. The owner of the automobile was Kenneth Andrews who had not obtained liability insurance to cover the vehicle. The bicycle rider, Ronald D. Brooks, was injured in the collision and brought an action against Billy D. Link to recover damages for his personal injuries. He recovered a judgment against Billy D. Link in the amount of $25,000 and sought by garnishment to compel the appellee, State Farm Mutual Insurance Company, to pay the judgment. Subsequent to the filing of the action by Ronald D. Brooks, Billy D. Link and his sister Shirley M.

Marsh filed a suit against State Farm Mutual, seeking a declaratory judgment that State Farm had provided insurance to cover the claim of Ronald D. Brooks against Billy D. Link. The issue to be determined in each of the actions requires the interpretation of an insurance policy and its application to the factual circumstances in order to ascertain whether or not insurance coverage was provided by State Farm.

The case was tried to the court sitting without a jury. After a full evidentiary hearing and the submission of briefs and oral arguments the trial court found in favor of State Farm and made extensive findings of fact and conclusions of law. The factual situation as disclosed by the evidence and as found by the trial court was essentially as follows: On the day of the collision on June 4, 1967, and for an extended period prior thereto, Billy D. Link and his sister Shirley Marsh were residing in the same household in Topeka. Billy D. Link did not own an automobile. Shirley Marsh owned a 1960 Chevrolet which she had acquired in August of 1966. Shirley Marsh purchased liability insurance coverage from State Farm which policy was in effect on the 1960 Chevrolet at the time of the accident. The State Farm policy provided liability coverage against bodily injury and property damage and by its terms provided an umbrella of protection not only to Shirley Marsh, the named insured, but also to relatives of the named insured residing in the same household. It was undisputed by the parties that Billy D. Link, as the brother of Shirley Marsh residing with her, was within the protection of the policy. There is no question that if Billy D. Link had been driving Shirley's 1960 Chevrolet at the time of the collision, liability coverage would have been afforded by State Farm.

The State Farm policy involved here also provided coverage in the use of a non-owned automobile driven either by the insured or a resident of the same household. Excluded from coverage under the "non-owned automobile" clause was any automobile furnished or available for frequent or regular use of the named insured, his spouse, or any relative of either residing in the same household.

We now introduce into the cast of characters, Kenneth Andrews, a long-time friend of Billy D. Link and the fiance of Shirley Marsh. Kenneth Andrews also lived in Topeka, Kansas, and was the owner of the 1963 Plymouth automobile involved in the collision with the bicycle. As stated heretofore Kenneth had no insurance on his vehicle. Kenneth, as Shirley's fiance, spent a great deal of time at Shirley's home. It was his custom to drive by to see Shirley nearly

every evening after work and on weekends. When Kenneth was visiting at Shirley's house he made available his 1963 Plymouth for the use of Billy and Shirley. The evidence discloses that on a number of occasions both Shirley and Billy used Kenneth's automobile for their own purposes with his full knowledge and consent. The trial court found that during the six-week period prior to the accident, the car parked most readily accessible to the street was used by Kenneth or Shirley without obtaining specific permission to use the car from the other. Kenneth had a duplicate set of keys made for his car which he gave to Shirley. He also had a duplicate set of keys made for Shirley's car which he kept in his possession. Shirley Marsh testified that during the two months prior to the accident she had driven the Andrews vehicle on 10 to 20 occasions. It is clear from the evidence that there was a common understanding between Kenneth Andrews and Shirley Marsh that either Billy or Shirley could use Kenneth's vehicle when available without obtaining Kenneth's permission. At the time of the accident on June 4, 1967, Billy was driving Kenneth's 1963 Plymouth with his permission in accordance with their understanding.

On this appeal it is the position of Billy D. Link and Shirley Marsh that on the day of the accident Billy was driving a "non-owned automobile" within the definition contained in the State Farm policy and that such policy provided liability insurance covering the accident with the bicycle. State Farm denies coverage under its policy issued to Shirley Marsh on her automobile for the reason that the automobile of Kenneth Andrews was not a "non-owned automobile" within the policy definition because it was furnished or available for frequent or regular use of the named insured or a relative residing in the same household. Stated specifically the issue to be determined in the case is whether or not the automobile of Kenneth Andrews was furnished to Shirley Marsh and Billy D. Link for frequent or regular use.

The trial court found that the automobile of Kenneth Andrews involved in the collision with Ronald Brooks was furnished for frequent or regular use by Shirley Marsh or Billy D. Link, that the automobile involved in the accident was not a "non-owned automobile" within the meaning of the State Farm policy and that the State Farm insurance policy issued to Shirley Marsh covering her 1960 Chevrolet did not at the time of the accident involving Kenneth Andrews' 1963 Plymouth provide insurance coverage for that vehicle under the "non-owned automobile" provision of the

policy. The district court entered judgment in favor of State Farm as garnishee in the personal injury case and as the defendant in the declaratory judgment action. Ronald Brooks has taken an appeal in the personal injury case. Shirley M. Marsh and Billy D. Link are appellants in the declaratory judgment suit. State Farm Mutual is the appellee in both cases.

On this appeal the appellants contend in substance that the State Farm policy does not clearly define what is meant by the words "frequent or regular use" and therefore the policy should be construed against the insurance company. (*Gowing v. Great Plains Mutual Ins. Co.*, 207 Kan. 78, 483 P. 2d 1072; *Sturdy v. Allied Mutual Ins. Co.*, 203 Kan. 783, 457 P. 2d 34.) They maintain that the purpose of the "non-owned automobile" coverage in an automobile policy is to protect the insured in the casual driving of automobiles other than his own. They cite Couch on Insurance, 2d Ed., Vol. 13, p. 68, 45:1052, to the effect that the intention of the policy provision excluding automobiles furnished for frequent or regular use is to prevent a situation in which the members of one family or household may have two or more automobiles used interchangeably but with only one particular automobile insured. They urge that there must be an actual or potential interchangeable use of vehicles before coverage is excluded. In support of their position in the case at bar that the Andrews automobile was not furnished for frequent or regular use, the appellants emphasize that Kenneth, Shirley and Billy were not members of the same household or family and that Kenneth's car was not available for interchangeable use. They point out that the use of Kenneth's car by Shirley and Billy was only incidental to visits by Kenneth and that it was not available for use at other times. They emphasize that Kenneth's automobile was never garaged at Shirley's house and that she never took the automobile from where it was garaged. When Kenneth was called out of town he did not deliver the automobile to Shirley. On one occasion when Shirley's car broke down, she did not make use of Kenneth's car but used a vehicle belonging to her mother.

It is the position of the appellee State Farm on this appeal that the question of whether or not Kenneth's vehicle was furnished for frequent or regular use is one of fact to be determined from the evidence and the trial court resolved that issue of fact in favor of the appellee and against the appellants. State Farm emphasizes certain factual circumstances to justify its claim of frequent or regu-

lar use. In the first place Kenneth had duplicate keys made not only for his own car but for Shirley's car which duplicate keys to his car were delivered to Shirley. There was a definite agreement between Shirley and Kenneth that neither had to ask permission of the other to use his or her automobile. Such an agreement, of necessity, contemplated a regularity of use. State Farm further points out that Kenneth's car was available to Shirley and Billy on nearly a daily basis and that Shirley drove Kenneth's car 10 to 20 times in the two months prior to the accident.

We find only one case in Kansas where an interpretation of the meaning of "regular use" of an automobile has been determined. In *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50, 292 P. 2d 711, the plaintiff Miller was a civilian employee of the adjutant general's department of Kansas and was the owner of a 1952 Pontiac automobile. He purchased from the defendant Farmers Mutual Automobile Insurance Company a standard automobile liability insurance policy. The policy provided that coverage would extend to plaintiff's driving of other automobiles except to any automobile furnished to him "for his regular use." Plaintiff was involved in an automobile collision while driving a 1951 Chevrolet "carry-all" owned by the adjutant general's department and available to plaintiff for trips made in the course of his duties. The evidence disclosed that plaintiff used the automobile not more than two or three times a year and then only for short trips. The insurance company argued that the vehicle was furnished to the plaintiff for his regular use and therefore excluded from coverage under the policy. The trial court after an evidentiary hearing found that the automobile was not furnished to the plaintiff for "regular use" and therefore plaintiff was covered by his Farmers Mutual policy. On appeal this court held that the question of whether or not an automobile is furnished for regular use is one of fact to be determined from the evidence in the case. The opinion points out that it is difficult to lay down any hard and fast rule and that generally speaking each case where the issue has arisen has been determined on its own facts and circumstances. In commenting on the use of other automobile provisions in a policy, we stated that the purpose and effect of such provisions are to extend the driver's insurance coverage to infrequent or casual driving of other automobiles but excluding from coverage the regular use of an automobile not described in the policy. It was held that the finding of the trial court that the "carry-

all" was not furnished to Miller by his employer "for regular use" was supported by the evidence.

The parties have diligently provided us with a number of cases from other jurisdictions which have passed upon the issue before us in this case. (*Giokaris v. Kincaid*, [Mo.] 331 S. W. 2d 633, 86 A. L. R. 2d 925; *Cotton States Mutual Ins. Co. v. Falls*, 114 Ga. App. 812, 152 S. E. 2d 811; *Pacific Auto. Ins. Co. v. Lewis*, 56 C. A. 2d 597, 132 P. 2d 846; *Rodenkirk v. State Farm Mutual Auto Ins. Co.*, 325 Ill. App. 421, 60 N. E. 2d 269; *Northwest Casualty Co. v. Legg*, 91 C. A. 2d 19, 204 P. 2d 106; *Aler v. Travelers Indemnity Co.*, 92 F. Supp. 620; *Farm Bureau Mut. Automobile Ins. Co. v. Boecher*, [Ohio, 37 Abs. 553] 48 N. E. 2d 895; *Ricci v. United States Fidelity and Guaranty Co.*, 110 R. I._____, 290 A. 2d 408; *Wallace Co. v. State F. M. Auto. Ins. Co.*, 220 Or. 520, 349 P. 2d 789; *Carr v. Home Indemnity Co.*, 404 Pa. 27, 170 A. 2d 588.)

We have examined these cases, as well as others, and find that, because they are factually distinguishable, none of them are controlling here. We note, however, that in practically all of the cases we have examined the courts agree that the question whether the particular use of a "non-owned automobile" is a "regular use" within the meaning of the policy is a question of fact. The courts are in agreement that no hard and fast rule has been or can be established for determining this question but each case must stand or fall upon an examination of the facts in the particular case. Furthermore the cases emphasize that the purpose of the so called "drive other automobiles" clause or "non-owned automobile" clause is to cover only casual or occasional use of other cars. Any other interpretation would subject the insurance company to greatly added risks without the payment of additional premiums. Particular courts place special emphasis upon particular factors. In *Ricci v. United States Fidelity and Guaranty Co.*, supra, the Supreme Court of Rhode Island stated that it is the availability of the car and the number of times it is used that should be the criteria. In *Wallace Co. v. State F. M. Auto. Ins. Co.*, supra, the Supreme Court of Oregon stated that the phrase "furnished for regular use" as used in context does not imply the manner of use but implies a right to the regular use of the automobile in the sense that there is an express or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile at such times as he desired, if available. It seems to us that the availability

of the car and the number of times it is used and the presence or absence of an express or implied understanding as to use are simply factors to be considered along with all the other circumstances in the case in determining whether or not a vehicle has been furnished for "frequent or regular use" within the meaning of an insurance policy.

In reaching the conclusion that the Andrews' vehicle was furnished or available for frequent or regular use by Shirley Marsh and Billy D. Link, the trial court had before it evidence to establish the following facts:

(1) The Andrews vehicle was available on a nearly daily basis.

(2) Kenneth Andrews gave Shirley Marsh a duplicate set of keys to his vehicle and also had in his possession for his own use a duplicate set of keys to Shirley's vehicle.

(3) There was a definite prior agreement or understanding between Kenneth and Shirley that Shirley or Billy could use the Andrews vehicle any time it was available without asking Kenneth's permission.

(4) Shirley drove the Andrews vehicle 10 to 20 times in the two months prior to the accident.

We have no hesitancy in holding that the findings by the trial court on the issue of "frequent or regular use" are amply supported by substantial competent evidence. Such being the case, under the well established rule, they are not to be disturbed on appellate review. If the findings of fact are upheld, the conclusions of the law made by the trial court are certainly correct and judgment was properly rendered thereon.

The judgment of the district court is affirmed.