No. 55,290

CENTRAL SECURITY MUTUAL INSURANCE COMPANY, *Appellant,* v. VICTORIA DePINTO and CINDY DIRKSEN, *Appellees,* and HESSTON COLLEGE, *Intervenor/Appellee.*

(681 P.2d 15)

Opinion filed April 27, 1984.

*Steven J. Roth,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and *H. E. Jones,* of the same firm, was with him on the briefs for the appellant.

*Thomas E. Hammond,* of Render & Kamas, of Wichita, argued the cause, and *Roger M. Theis,* of the same firm, was with him on the brief for appellee Cindy Dirksen.

*David C. Burns,* of Speir, Stroberg & Sizemore, of Newton, argued the cause, and *Robert D. Myers,* of the same firm, was with him on the briefs for intervenor/appellee Hesston College.

The opinion of the court was delivered by

LOCKETT, J.: This is a declaratory judgment action. Central Security Mutual Insurance Company appeals from the district court's determination that exclusionary language contained within its automobile liability policy was not applicable to an automobile accident in which Victoria DePinto was driving a van belonging to Hesston College. The Court of Appeals affirmed

the trial court; the case is before this court on a Petition for Review.

In March, 1980, Victoria DePinto was a nursing student at Hesston College. As part of her nurses training, DePinto was required to participate with other students in clinical programs at hospitals in the towns around Hesston. Hesston College provided vans to transport its nursing students to the hospitals. Different students volunteered to serve as drivers each semester. DePinto volunteered to drive for the semester beginning in February, 1980. She was required to drive to and from a Newton hospital on Tuesday evenings and again on Wednesday mornings.

DePinto did not drive the same van each time nor did she have her own keys to any van. She obtained a key each Tuesday afternoon from the nursing department office or some other campus location, obtained the assigned van at a campus parking lot, and then picked up the other students at the designated location near the campus cafeteria. Upon returning to the college following the Tuesday evening session, DePinto was required to park the van on campus. DePinto kept the keys overnight since she was to drive the assigned vehicle again early Wednesday morning and the campus offices were not yet open when the students departed. When the van was parked on Tuesday evening, she was not permitted to drive it again until Wednesday morning. DePinto was required to drive the most direct route to and from the hospital and she was not permitted to use the van for personal errands while in Newton. After returning to the campus on Wednesday afternoon, DePinto was required to park the vehicle and to return the van keys to the office from which she had obtained them. DePinto did not have permission to use the van at any other time or for any other purpose.

At approximately 6:30 a.m. on March 12, 1980, while enroute to the hospital, DePinto was involved in an automobile accident in Newton. The Hesston College van which she was driving collided with a pickup truck in which Richard Dirksen was a passenger. Dirksen was killed. Dirksen's wife, Cindy Dirksen, subsequently filed an action for damages against DePinto and others in the United States District Court for the District of Kansas.

At the time of the accident, an automobile liability policy was

in effect between Central Security Mutual Insurance Company and Thomas DePinto, father of Victoria DePinto. Since Victoria was a resident of her father's household and did not own a car at the time of the accident, she was afforded coverage under her father's policy. The policy contained the following provision concerning the use of cars other than those owned by the insured party:

"We insure other Cars You use with the permission of the owner. This doesn't include Cars owned by, or furnished for the regular use of, You or resident members of Your family."

Plaintiff claims that its policy excluded coverage for defendant, Victoria DePinto, in this accident on the basis that the van involved in the accident was "furnished for the regular use" of DePinto. Hesston College was permitted to intervene in the action. The trial court ruled that the exclusionary language contained in the policy was ambiguous and was to be construed in favor of the insured. The trial court concluded that the exclusionary provision was inapplicable and that the policy did provide coverage for the accident. Plaintiff appeals from that decision.

The purpose of an exclusionary clause within an automobile liability policy, that its coverage shall not extend to an automobile owned by or furnished for the regular use of the named insured or a member of the insured household, is to protect the insurer against the loss of premiums. It also protects the insurer against the uncompensated exposure which results from the insured's use of other automobiles where the insured or members of the same household own two or more automobiles which are used interchangeably with the insured automobile or furnished the insured for regular use.

Was the exclusionary language of the insurance policy ambiguous, therefore subject to construction in favor of the insured? An insurance policy is a contract. The plain and unambiguous language contained within the contract must be given its plain meaning. Where an insurance contract is open to different constructions, that most favorable to the insured must be adopted, but this rule does not authorize a perversion of the language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.

A basic principle in the construction of contracts is that an

ambiguity in the language of the contract will be strictly construed against the party who drafted the provision. *Foltz v. Begnoche,* 222 Kan. 383, 565 P.2d 592 (1977). This rule is particularly applicable to the interpretation of contracts of insurance and requires liberal construction in favor of the insured. *Brown v. Combined Ins. Co. of America,* 226 Kan. 223, 597 P.2d 1080 (1979). Coverage clauses of automobile liability policies are to be broadly interpreted to afford the greatest possible protection to the insured while exclusionary clauses are interpreted narrowly. *United States Fidelity & Guar. Co. v. Farm Bureau Mut. Ins. Co.,* 2 Kan. App. 2d 580, 584 P.2d 1264 (1978). Thus, if the contract term is ambiguous, it will be construed in favor of coverage of DePinto.

An ambiguity is said to exist if "the words used to express the meaning and intention of the parties are insufficient in a sense that the contract may be understood to reach two or more possible meanings." *Western Casualty & Surety Co. v. Budig,* 213 Kan. 517, 519, 516 P.2d 939 (1973), 66 A.L.R.3d 442. The phrase "regular use" may seem to have several possible meanings. It could refer to the frequency of the use of the automobile, the purpose for which the use of the automobile was permitted, or the degree of permission needed in order to use the automobile. Where an insurer intends to limit or restrict the coverage under its policy, it should use language which clearly reveals its stated purpose. *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.,* 215 Kan. 937, Syl. ¶ 8, 529 P.2d 171 (1974).

It is noted in 12A Couch on Insurance 2d § 45:1076 (rev. ed. 1981):

"The phrase 'not furnished for the regular use' of any person is to be given its plain, ordinary meaning, which is simply that the insured was not covered by the policy on the insured vehicle if he was injured in some other car which he could regularly use." p. 729.

The Court of Appeals held in *Central Security Mut. Ins. Co. v. DePinto,* 9 Kan. App. 2d 85, 87, 673 P.2d 122 (1983):

"We agree with appellant that the phrase is not ambiguous . . . . The words are not unusual and their meaning is well known in common parlance. It is not a matter of ambiguity that causes courts to struggle with this phrase. Courts struggle with its application because each case must be decided upon its own facts and circumstances, and therefore, its application is a struggle. Its meaning is not."

Thus, the greatest portion of litigation on this issue is due not to an ambiguity of the term but rather the problem with applying the term to each set of facts. We agree with the Court of Appeals determination that the phrase "regular use" contained within the contract was not ambiguous.

The question of whether the particular use of a nonowned automobile is a "regular use" is a question of fact. See *Brooks v. Link,* 212 Kan. 690, 695, 512 P.2d 374 (1973). This case was submitted to the trial court upon documentary evidence including the deposition of defendant DePinto, and stipulated facts. Consequently, this court on review has as good an opportunity to examine and consider the evidence as did the trial court, and to redetermine what the facts establish. *Stith v. Williams,* 227 Kan. 32, Syl. ¶ 2, 605 P.2d 86 (1980). The burden of proving the application of the exclusionary clause of the insurance policy falls upon the plaintiff insurance company. *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Assn.,* 215 Kan. 937, Syl. ¶ 10.

There are three Kansas cases in which "regular use" exclusions in automobile insurance policies were an issue. See *Miller v. Farmers Mutual Automobile Ins. Co.,* 179 Kan. 50, 292 P.2d 711 (1956); *General Leasing Corp. v. Anderson,* 197 Kan. 327, 416 P.2d 302 (1966); and *Brooks v. Link,* 212 Kan. 690. In affirming the trial court, the Court of Appeals, in a well written opinion by Judge Wahl, District Court Judge, assigned to the Court of Appeals, reviewed the three Kansas cases and similar cases from other jurisdictions. 9 Kan. App. 2d 85, 673 P.2d 122 (1983).

In *Miller v. Farmers Mutual Automobile Ins. Co.,* 179 Kan. 50, the court considered the exclusionary phrase "furnished for regular use" to the named insured. This involved the use of a "car pool" vehicle which the insured seldom used but could have used more often. The trial court found that the vehicle was not furnished to Miller for his regular use. The Supreme Court affirmed. The court noted "that courts have found it difficult to lay down any hard and fast rule, and that, generally speaking, each case has been decided upon its own facts and circumstances." 179 Kan. at 54.

In *General Leasing Corp. v. Anderson,* 197 Kan. 327, the court considered the meaning of "furnished for regular use" as it

applied to a car loaned by a father to his adult, self-supporting son. The Supreme Court affirmed the trial court's ruling that it was not furnished for regular use. The son kept his car in Emporia. The father kept his car in Burlington and it was not usually available to the son or used by him regularly. The son had the car for a special occasion and had used the father's car only three or four times a year.

The phrase "frequent or regular use" of a "non-owned automobile" was before the court in *Brooks v. Link*, 212 Kan. 690. Link lived with his sister, Shirley. Shirley owned a car which was insured and the insurance covered Link's use of the car as a relative residing in the same household. Excluded from coverage under the policy was any automobile "furnished or available for frequent or regular use." Shirley's fiance, Kenneth, spent much time at Shirley's home in the evenings and on weekends. When he was there he made his car available to Link and Shirley. They both used it with his consent and by his agreement. They had duplicate keys for it. Kenneth had no insurance on the car. Link, while driving Kenneth's car, struck Brooks. The car was found to be furnished for frequent or regular use by Shirley and Link, was not a "non-owned automobile" within the meaning of Shirley's policy, and the policy provided no coverage for Link's use of Kenneth's car. The court, after examining many cases, observed:

"[T]he courts agree that the question whether the particular use of a 'non-owned automobile' is a 'regular use' within the meaning of the policy is a question of fact. The courts are in agreement that no hard and fast rule has been or can be established for determining this question but each case must stand or fall upon an examination of the facts in the particular case. Furthermore the cases emphasize that the purpose of the so called 'drive other automobiles' clause or 'non-owned automobile' clause is to cover only casual or occasional use of other cars. Any other interpretation would subject the insurance company to greatly added risks without the payment of additional premiums. . . . It seems to us that the availability of the car and the number of times it is used and the presence or absence of an express or implied understanding as to use are simply factors to be considered along with all the other circumstances in the case in determining whether or not a vehicle has been furnished for 'frequent or regular use' within the meaning of an insurance policy." 212 Kan. at 695-96.

In *Travelers Indemnity Company v. Hudson*, 15 Ariz. App. 371, 375, 488 P.2d 1008 (1971), the court defined regular use as "continuous use; uninterrupted normal use for all purposes; without limitation as to use; and customary use as opposed to occasional use or special use."

In *Wallace Co. v. State F. M. Auto. Ins. Co.*, 220 Or. 520, 526, 349 P.2d 789 (1960), the Supreme Court of Oregon stated that the phrase "furnished for regular use" as used in context does not imply the manner of use "but implies a right to the regular use of the automobile in the sense that there is an expressed or implied understanding with the owner of an automobile that the insured could have the use of the particular automobile" at such time as he desired, if available.

The parties in the instant case discussed numerous cases from other jurisdictions addressing this issue. As stated in the *Brooks* case, since each of these cases was decided upon its own particular facts, they are of no direct precedential value. 212 Kan. at 695. See also 12A Couch on Insurance 2d § 45:1076; Annot., 8 A.L.R.4th 387 § 6; and 7 Am. Jur. 2d, Automobile Insurance § 244.

The cases cited by appellant generally involved the use of an employer's vehicle by an employee. See *Kern v. Liberty Mutual Insurance Company*, 398 F.2d 958 (8th Cir. 1968), and *United Services Auto. Ass'n v. Couch*, 643 S.W.2d 668 (Tenn. App. 1982). It is stated that in such employment situations, the use of the vehicle is generally considered to be a regular use. 7 Am. Jur. 2d, Automobile Insurance § 244; see *Miller v. Farmers Mutual Automobile Ins. Co.*, 179 Kan. 50. This case clearly does not fall under the employment situation for DePinto was not required, as a condition of her education, to drive her fellow students to Newton, and received no compensation for doing so.

In 12A Couch on Insurance 2d, p. 730, the following test is set forth for determining if an automobile is furnished for "regular use:"

"The test whether an automobile is furnished for 'regular' use within an exclusionary clause is not necessarily the frequency or regularity of its use, although an infrequent and casual use by special permission on particular occasions may not constitute a furnishing for regular use. It is the nature of the use for which the vehicle is intended and to which it is put, rather than the actual duration of use, which is significant."

7 Am. Jur. 2d, Automobile Insurance § 244, p. 810, states:

"A vehicle is not furnished for the regular use of an insured where he must obtain permission for each instance in which he uses the vehicle, or where the times and manner of use of the automobile by the insured are determined solely by the owner of that automobile."

Applying the various factors, the Court of Appeals determined:

"Turning to the facts of the instant case, DePinto's use of the college vans was strictly circumscribed. She had no personal use of the vehicles. Even the route of her travel was regulated by the college. She did have the keys on Tuesday nights but that was merely because the college offices were neither open when she returned nor when she left again on Wednesday morning. The vehicle was not available for her personal use on Tuesday night. The students' driving of the college vans was for the benefit of Hesston College in that no driver had to be employed to take the nursing students to and from the neighboring hospitals for their training. As to DePinto, it was not a continuous use, uninterrupted normal use for all purposes, or without limitation as to use. DePinto's use of the vans was merely an occasional or special use. The policy does provide coverage for the accident in question." 9 Kan. App. 2d at 89.

The judgment of the trial court was affirmed by the Court of Appeals.

DePinto's use of the van was not a "regular use." The district court and the Court of Appeals both correctly held the exclusionary provision in the automobile liability contract is inapplicable and the policy provided coverage to DePinto.

The judgment is affirmed.

HERD, J., not participating.