Steven D. CROWTHER, Trustee for Computer Service of Southern Utah Pension Trust, Plaintiff and Respondent,

v.

Murlan D. CARTER, Defendant and Appellant.

No. 870524–CA.

Court of Appeals of Utah.

Jan. 4, 1989.

Michael Westfall (Argued), Gallian & Westfall, St. George, for defendant and appellant.

James L. Shumate (Argued), Cedar City, for plaintiff and respondent.

Before BILLINGS, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Murlan D. Carter ("Carter") appeals from a May 1987 district court judgment and order directing that the parties' limited partnership be dissolved and its assets sold if not reacquired by Carter by a date cer-tain. The primary issues on appeal are: (1) whether the trial court erred as a matter of law in concluding the partnership agreement unambiguously set forth the percentage of ownership interest to be granted respondent in return for payment of a trust deed note secured by partnership property; and (2) whether there is sufficient evidence to support the court-ordered dissolution of the limited partnership.[1] We affirm.

In July 1982, Carter (as general partner) and Crowther (on behalf of the trust as limited partner) entered into a twenty-year limited partnership agreement for the general purpose of developing and selling real estate, primarily a mobile home park. Under Paragraph 5 of the agreement, Carter agreed to contribute to the partnership his equity under a real estate contract in land that was to be the site of the development. Pursuant to the first part of Paragraph 6 of the agreement, entitled "Capital Contributions of the Limited Partner," Crowther agreed to perform the following as his "initial capital contribution" to the partnership: (a) pay off a $17,000 trust deed evidencing a debt owed by Carter; (b) "use his best efforts" to substitute himself as obligor on a first trust deed note to First Security Bank on the mobile home park property ("the property") constituting the primary partnership asset; and (c) "use his best reasonable efforts" to obtain a letter of credit or other bond or security required as a precondition to the property's development.

Pursuant to the second section of Paragraph 6, the limited partner also agreed to contribute "additional cash or property" to the partnership, at Carter's request, in the form of: (A) payment of the outstanding balance owed ($95,500) on the contract to purchase the property, thereby paying off the first trust deed note on the property referred to above; (B) payment of $7,000 in back taxes on the property; (C) payment of $15,000 in mechanics' liens filed against the

---

1. Appellant also contends the trial court erred in determining that the term "prime interest rate" in the reacquisition provision of the agreement means the prime lending rate of the State Bank of Southern Utah. We refuse to address this issue, however, because the record shows appellant's trial counsel affirmatively agreed to this interpretation at the June 11, 1985, hearing on his objections to the proposed judgment.

property; and (D) payment of $5,000 for sewer work on the property.

Carter's first issue on appeal involves the interpretation of the following language in the partnership agreement immediately after the provisions for the initial and additional capital contributions by the limited partner:

It is the intention of the GENERAL PARTNER and the LIMITED PARTNER to this Agreement, that in return for LIMITED PARTNER's initial investment of SEVENTEEN THOUSAND DOLLARS ($17,000.00) and his attempts to substitute himself in place of [another of Carter's limited partnerships] on a 1st Trust Deed Note with First Security Bank, and his best effort to provide a Letter of Credit or other bond or security to finance the developments to the above-described real property, the LIMITED PARTNER shall have and hereby is given a twenty percent (20%) ownership interest in the real property and project described above. Further, in the event that LIMITED PARTNER is required to contribute any more cash to the development of the project, LIMITED PARTNER shall receive one (1) additional percentage point of ownership interest for each ONE THOUSAND DOLLARS ($1,000.00) of additional cash which he contributes to the project. Fractions of ONE THOUSAND DOLLAR ($1,000.00) contributions will buy LIMITED PARTNER an equal fraction of ownership.

A subsequent provision permitted Carter to reduce or eliminate the limited partner's ownership interest by paying back, within five years, all or part of the limited partner's total contribution to the project, plus interest on that contribution calculated quarterly at one and one-half percent above the prime interest rate.

Despite his efforts, respondent was not substituted on the trust deed note to First Security Bank. Nonetheless, in May 1983 Crowther paid off that note and a warranty deed was executed placing title to the property in Carter, who then signed a note to Crowther for $132,535.54 secured by a deed of trust on the property. Appellant Carter made only one interest payment on this note. Two years later, Crowther filed suit seeking, as alternative relief, foreclosure pursuant to the May 1983 trust deed or sale of the partnership assets and dissolution of the partnership. After bench trial, the court concluded the provision quoted above was unambiguous and, based on the initial and additional contributions made by the limited partner, found respondent entitled to more than a 100 percent ownership interest in the partnership.

If a contract is ambiguous and the trial court finds facts regarding the parties' intentions based on evidence extrinsic to the contract itself, those findings may not be set aside on appeal unless they are clearly erroneous under Utah Rule of Civil Procedure 52(a). *Porter v. Groover*, 734 P.2d 464, 465 & n. 1 (Utah 1987); *Circle Airfreight v. Boyce Equipment*, 745 P.2d 828 (Utah Ct.App.1987). However, a trial court's interpretation of the words of an unambiguous, integrated contract is a question of law, which is reviewed on appeal for correctness. *Kimball v. Campbell*, 699 P.2d 714, 716 (Utah 1985). *See Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892 (Utah 1988). Whether ambiguity exists in a contract is itself a question of law. *Faulkner v. Farnsworth*, 665 P.2d 1292, 1293 (Utah 1983). Contract language is considered ambiguous if the words used to express the meaning and intention of the parties are "insufficient in a sense that the contract may be understood to reach two or more plausible meanings." *Metropolitan Property & Liab. Ins. Co. v. Finlayson*, 751 P.2d 254, 257 (Utah Ct.App.1988) (quoting *Central Sec. Mut. Ins. Co. v. DePinto*, 235 Kan. 331, 681 P.2d 15, 17 (1984)).

In this appeal, Carter does not claim the trial court clearly erred in determining Crowther had complied with his obligation ((b), above) to use his best efforts to substitute himself as obligor on the first trust deed note. Instead, he contends the trial court erroneously concluded the partnership agreement provision, quoted above, unambiguously entitled the limited partner to an *additional* one percent ownership interest for each thousand dollars actually

paid to retire the first trust deed note on the property. Carter maintains that the agreement is ambiguous and a "reasonable" interpretation of it would construe the Trustee's actual payment of the first trust deed note under paragraph 6(A) as *substitute* performance in lieu of requirement (b) of the limited partner's *initial* contribution, thus entitling respondent to only a twenty percent ownership interest. No reasonable person, he insists, would have given the limited partner a twenty percent ownership interest in property allegedly worth $556,000 in exchange for $17,000 and *unsuccessful* efforts of the limited partner to substitute itself as obligor on the first trust deed note.

The problem with appellant's position is that he would have us read requirement (b), one of three preconditions to respondent's entitlement to a twenty percent ownership interest, as obliging Crowther to be *successful* in his efforts to be substituted as obligor on the trust deed note to First Security Bank in order to earn a twenty percent ownership interest. But it is not the function of a court to rewrite an unambiguous contract. *Provo City Corp. v. Nielson Scott Co.*, 603 P.2d 803 (Utah 1979). Although the parties could have made such an agreement, the clear language in (b) states that Crowther only had to use his best efforts to become the obligor; in return for that and other conduct, respondent became the owner of one-fifth of the partnership.

■ The paragraph quoted above is likewise not subject to two competing, but plausible, meanings. It clearly states that respondent is entitled to one percent additional ownership interest for each $1,000 additional capital contribution actually paid. There is nothing to suggest the additional term proposed by appellant, i.e., that this actual payment was to be a substitute for performance of (b) if, despite the trustee's best efforts, the trustee was not, in fact, made solely liable on the first trust deed note. In short, the parties' intentions regarding the interest the trustee was gaining as a result of his various actions in compliance with paragraph 6(a)–(c) and (A)–(D) is spelled out clearly and definitely.

These express contract provisions are not rendered ambiguous merely because appellant claims they should be interpreted other than according to their plain meaning. *See Jones v. Hinkle*, 611 P.2d 733, 735 (Utah 1980). Although Carter, perhaps out of foolishness or financial desperation, agreed to terms favorable to Crowther, we will not inject ambiguity into a contract where none exists in order to save him from what, in retrospect, seems an ill-advised agreement. *See Dalton v. Jerico Constr. Co.*, 642 P.2d 748 (Utah 1982).

The trial court correctly concluded the partnership agreement is unambiguous and properly treated respondent's payment of the trust deed note as an "additional capital contribution" under the agreement, which, along with other contributions, resulted in the respondent's 125 percent ownership interest in the partnership.

■ Appellant also challenges the sufficiency of the evidence to support the trial court's finding that he had "willfully" breached the partnership agreement, asserting that such a determination is a prerequisite to judicial dissolution of the partnership. There is substantial evidence in the record to support the findings that Carter conducted the partnership business and kept the books and records contrary to the parties' agreement and that he retained and used partnership funds for private purposes not furthering the partnership's interests. Therefore, we cannot say these findings are clearly erroneous. *See* Utah R.Civ.P. 52(a). *See also Nupetco Assocs. v. Jenkins*, 669 P.2d 877 (Utah 1983).

The applicable statute sets forth several alternative grounds for court-ordered partnership dissolution that do not contain any element of intentional misconduct:

(1) On application by or for a partner the court shall decree a dissolution whenever:

. . . .

(d) A partner willfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partner-

ship business that it is not reasonably practicable to carry on the business in partnership with him.

. . . .

(f) Other circumstances render a dissolution equitable.

Utah Code Ann. § 48–1–29(1) (1981). Carter's conduct, regardless of his intent, provides more than ample support for the conclusion that it was no longer reasonably practicable or equitable for the parties to continue their partnership business, rendering dissolution appropriate.

The judgment and order of the trial court is affirmed.

BILLINGS, J., concurs.

ORME, Judge (concurring):

I concur fully in Judge Jackson's opinion, but wish to make two observations.

First, while the partnership agreement unambiguously provides that amounts paid by Crowther beyond his initial partnership contribution would entitle him to additional increments of ownership, I question that the parties ultimately intended that the amount advanced by Crowther to pay off the First Security obligation would be treated in this way. On the contrary, a secured note for this amount was given by Carter to Crowther, suggesting quite clearly that the parties intended that this transaction be treated outside the regular partnership arrangement. Instead of acquiring additional equity in the partnership, Crowther became Carter's creditor. Upon default in payment of the note, Crowther was entitled to foreclose. Indeed, foreclosure was his primary claim in this action, with partnership dissolution the fallback.

While I think error was committed in not decreeing foreclosure, I see no error in the main opinion's silence on this issue. Carter does not contend on appeal that foreclosure should have been granted instead of dissolution of the partnership. Indeed, he fared much better under the trial court's approach because of the provisions in the partnership agreement permitting Carter's reacquisition of Crowther's interest. Nor

has Crowther cross-appealed the denial of foreclosure, having correctly decided that by the time this appeal could be resolved, the reacquisition rights would have expired anyway.

Since no one is challenging the trial court's decision to disregard the secured note from Carter to Crowther and to analyze the sums paid by Crowther to First Security with reference only to the partnership agreement, I am able to join the main opinion since the opinion correctly describes the treatment these sums were unambiguously to be accorded under the partnership agreement.

This brings me to my second point. Carter's best theory of ambiguity is really this: While the agreement is perhaps clear and unambiguous on its face in a narrow sense, the result is so absurd that the parties cannot possibly have meant what they seem to have said, making the agreement ambiguous as a practical matter.

While there may be situations where such an argument would be compelling, this is not one of them. The partnership arrangement, while not exactly a coup for Carter, makes sense. It was worth his parting with a minority interest in the business to attract a partner with financial wherewithal. In addition to a partner with cash, transfer of a twenty percent interest to Crowther bought $17,000 plus a commitment to do some things helpful to Carter, most importantly an effort to get the bank to let Carter's other partnership off the note to First Security in exchange for Crowther's becoming liable. But actually paying the note was another matter entirely. If partnership earnings proved insufficient and Crowther were required to pay it off personally, he was to receive one percent in the partnership for each $1,000 paid above and beyond his initial investment. Carter's protection against Crowther's acquiring full ownership of the partnership for a song, comparatively speaking, was Carter's right to reacquire that ownership interest, as provided in the agreement, by repaying Crowther what he had advanced plus interest.

In short, I think the agreement is not only unambiguous as a matter of language usage—it is also perfectly sensible in its business context.