ESTATE OF Bradley KINSER, et al., Natalie Rike, Ava Rike, Rachel Kinser, Don Page, Jayne Page, and Erie Insurance Company, Appellants–Defendants,

v.

INDIANA INSURANCE COMPANY, Appellee–Plaintiff.

No. 29A02–1009–PL–1093.

Court of Appeals of Indiana.

May 25, 2011.

---

Matthew W. Lloyd, Lloyd Law Office, Bloomington, IN, Attorney for Appellant Natalie Rike and Ava Rike.

Donald W. Francis, Jr., Bloomington, IN, Attorney for Appellant Estate of Bradley Kinser and Rachel Kinser.

P. Michael Summers, Summers Law Office, New Albany, IN, Attorney for Appellant Don Page and Jayne Page.

Joseph M. Dietz, Rick D. Meils, Andrew M. Sumerford, Meils Thompson Dietz & Berish, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

ROBB, Chief Judge.

*Case Summary and Issues*

Following Bradley Kinser's car accident and death while driving his girlfriend's car, Kinser's auto insurance carrier, Indiana Insurance Company, filed for a declaratory judgment that it is not obligated to cover any losses because Kinser's policy excluded coverage for a vehicle furnished or available for his regular use. The Estate of Bradley Kinser, Natalie Rike, Ava Rike, Rachel Kinser, Don Page, Jayne Page, and Erie Insurance Company (collectively "Appellants"), appeal from the trial court's grant of summary judgment in favor of Indiana Insurance and denial of their own motion for summary judgment. On appeal, Appellants raise two issues, which we restate as whether the trial court erred in concluding that Indiana Insurance is entitled to judgment as a matter of law, and that Appellants are not entitled to judg-

ment as a matter of law. Concluding that a genuine issue of fact remains and that neither Appellants nor Indiana Insurance is entitled to judgment as a matter of law, we reverse and remand.

*Facts and Procedural History* [1]

In December 2008, Bradley Kinser and Natalie Rike were in a long-term relationship and lived together and with their children from prior relationships in Spencer, Indiana. Kinser had a daughter, Rachel, and a son, Braden, and Rike had a daughter, Ava.

Kinser and Rike worked for the same company in Indianapolis and for several months had commuted together daily. Kinser owned a Chevy Trailblazer, insured by Indiana Insurance Company, and Rike owned a Ford Focus, insured by Erie Insurance Company and jointly titled with her father. Because the Focus was more fuel efficient, they usually used the Focus to drive to and from work—Kinser drove them to work in the mornings and Rike drove them home in the evenings.

For weekend trips the five-person family often used the Trailblazer. Rike testified in a deposition that Kinser drove the Trailblazer for most errands and only used the Focus to drive them to work or on other long drives. Rike further testified that although they each had keys for each other's cars "for lock-out purposes," Appellants' Appendix at 113, Kinser would ask for permission to use the Focus, and "wouldn't just take it without asking." *Id.* at 114. Rike recalled only one occasion on which Kinser sought such permission—to pick up his children because the Focus was blocking the Trailblazer in the driveway— and she granted him permission.

On December 14, 2008, neither Kinser nor Rike had work and they drove Rachel and Ava to the Children's Museum of Indianapolis in the Focus. On the way home, while Kinser was driving, they collided with a car occupied by Don Page and Jayne Page. As a result of the collision, Rike, Rachel, Ava, Don, and Jayne were injured, and Kinser was killed.

In June 2009, Indiana Insurance filed an action seeking declaratory judgment that damages from the accident were excluded from coverage by Kinser's insurance policy. Under the terms of his policy, Kinser was generally insured for his "use of any auto," *id.* at 126, but excluded from coverage for his use of: "[a]ny vehicle, other than 'your covered auto', which is[ ] ... [o]wned by you[ ] or ... [f]urnished or available for your regular use." *Id.* at 128.

Following cross-motions for summary judgment and a hearing, the trial court granted summary judgment in favor of Indiana Insurance and denied the Appellants' motion for the same. In pertinent part, the trial court stated: "the undisputed facts show that Mr. Kinser regularly used the vehicle and that it was, if not furnished, always available for his use." *Id.* at 7. Appellants now appeal. Additional facts will be supplied as appropriate.

*Discussion and Decision*

## I. Standard of Review

On appeal of a summary judgment order we are bound by the same standard as the trial court, and we consider only those materials which the parties designated at the summary judgment stage. *Estate of Pflanz v. Davis*, 678 N.E.2d 1148, 1151 (Ind.Ct.App.1997). Summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

1. We heard oral argument on April 21, 2011, at Ivy Tech Community College in Lafayette, Indiana. We thank Ivy Tech for its hospitality and counsel for their advocacy.

matter of law." Ind. Trial Rule 56(C). The moving party bears the burden of showing no genuine issue of material fact in reliance upon specifically designated evidence. *Pflanz*, 678 N.E.2d at 1150. If the moving party satisfies its burden, the burden shifts to the non-movant to set forth specifically designated evidence showing there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute, or where undisputed facts are capable of supporting conflicting inferences on such an issue. *Briggs v. Finley*, 631 N.E.2d 959, 963 (Ind.Ct.App.1994), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Gen. Accident Ins. Co. of Am. v. Hughes*, 706 N.E.2d 208, 210 (Ind. Ct.App.1999), *trans. denied.*

We liberally construe all designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact for trial. *Dunifon v. Iovino*, 665 N.E.2d 51, 55 (Ind.Ct.App.1996), *trans. denied.* We may affirm a trial court's grant of summary judgment upon any theory supported by the designated materials. *Sims v. Barnes*, 689 N.E.2d 734, 735 (Ind. Ct.App.1997), *trans. denied.* Additionally, we "may determine in the context of summary judgment a mixed question of law and fact." *Ebbinghouse v. FirstFleet, Inc.*, 693 N.E.2d 644, 647 n. 2 (Ind.Ct.App.1998), *trans. denied.*

The fact that the parties filed cross-motions for summary judgment does not alter our standard of review. *Pond v.*

*McNellis*, 845 N.E.2d 1043, 1053 (Ind.Ct. App.2006), *trans. denied.* We consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

## II. Insurance Policy Exclusions

### A. Judicial Construction of Insurance Policy Exclusions

■ The following general principles guide our construction of insurance policies:

> Insurance policies are governed by the same rules of construction as other contracts. As with other contracts, the interpretation of an insurance policy is a question of law. When interpreting an insurance policy, our goal is to ascertain and enforce the parties' intent as manifested in the insurance contract. We construe the insurance policy as a whole and consider all of the provisions of the contract and not just the individual words, phrases or paragraphs.[2] If the language is clear and unambiguous, we give the language its plain and ordinary meaning. An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. However, an ambiguity does not exist merely because the parties proffer differing interpretations of the policy language.

*Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind.Ct.App.2009) (citations omitted), *trans. denied.*

■ Further, "[a]n exclusionary clause must clearly and unmistakably express the particular act or omission that will bring the exclusion into play." *Jackson v. Jones*, 804 N.E.2d 155, 158 (Ind.Ct.

---

**2.** We construe insurance policies as a whole in each case, and therefore prior cases that focus upon similar or identical clauses or exclusions are not necessarily determinative of later cases because the insurance policies as a whole are likely to differ. In other words, the same clause may be construed differently in different cases because the identical clauses are only part of each insurance policy under consideration.

App.2004). Similarly, "[i]t is well settled law that a condition or exclusion in an insurance policy must clearly and unmistakably bring within its scope the particular act or omission that will bring the condition or exclusion into play in order to be effective, and coverage will not be excluded or destroyed by an exclusion or condition unless such clarity exists." *Asbury v. Indiana Union Mut. Ins. Co.*, 441 N.E.2d 232, 242 (Ind.Ct.App.1982).

### B. Exclusion from Coverage

■ At issue on appeal is whether the relevant exclusion in Kinser's policy allows for judgment as a matter of law in favor of Indiana Insurance, if the exclusion and designated evidence allow for summary judgment in favor of Appellants, or if a genuine issue of material fact remains. The relevant exclusion reads:

> We do not provide Liability Coverage for the ownership, maintenance, or use of:
>
> * * *
>
> 2. Any vehicle, other than "your covered auto", which is:
>
> a. Owned by you; or
>
> b. Furnished or available for your regular use.

Appellants' App. at 128. Indiana Insurance argues and the trial court ruled that Rike's Focus was furnished or available for Kinser's regular use, and therefore the exclusion applies.

In a prior case we have acknowledged the following rationale for this exclusion: to "prevent the insured from purchasing an insurance contract to cover the risk of operating one vehicle, and obtaining coverage on another vehicle that is regularly used in the household." *Earl v. Am.*

*States Preferred Ins. Co.*, 744 N.E.2d 1025, 1029 (Ind.Ct.App.2001) (quoting *Farber v. Great Am. Ins. Co.*, 406 F.2d 1228, 1232 (7th Cir.1969)) (emphasis omitted), *trans. denied*. In *Earl*, we deemed the exclusion "valid and understandable," and not ambiguous.[3] *Id.*

We have also considered this exclusion in several other cases, which provide helpful guidance as detailed below. However, we ultimately conclude that a genuine issue of material fact remains as to the scope and extent that Kinser felt he needed and he actually did need Rike's permission to drive the Focus, which affects the determination of whether it was furnished or available for his regular use.

In the relevant exclusion from coverage in Kinser's policy, the meanings of "[f]urnished" and "available" are crucial. Appellants' App. at 128. These terms denote that it is not merely regular use that matters, but the extent of the insured's right to regular use that matters. Although the policy's failure to define these terms does not necessarily render ambiguous the terms or the policy itself, the absence of these crucial definitions is certainly notable.

We decline Appellants' invitation to interpret this disjunctive exclusion as conjunctive. The policy excludes coverage for a vehicle "[f]urnished *or* available for [the insured's] regular use." Appellants' App. at 128 (emphasis added). Contrary to Appellants' argument, no Indiana case has interpreted this exclusion as conjunctive and we refuse to do so here.

Considering the same exclusion in *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220 (Ind. Ct.App.1997), our court addressed whether an insured's personal car insurance policy

---

**3.** *Cf. supra* note 2 (stating that the same clause may be construed differently in different cases because the identical clauses are only part of each insurance policy under consideration).

excluded coverage of his accident while driving a newspaper delivery van, when he generally drove the same van each of the six nights per week that he worked. We referred to the dictionary definition of "furnish" as "to provide with what is needed, ... supply, give." *Id.* at 223 (citation omitted). Accordingly, we applied the exclusion to exclude coverage for the delivery driver because the van was "supplied for Smith's use ... while he was at work." *Id.*

Appellants' case is quite different. Rike did not employ Kinser and furnish him with the Focus. And while "furnish" does not necessarily mean that one was supplied with a vehicle as part of one's employment, the general nature of an employment relationship is certainly one way to meaningfully distinguish "[f]urnish[ing]" a vehicle from making a vehicle "available." Appellants' App. at 128. And we choose not to interpret "[f]urnish[ ]" in a way that would impart it the same meaning as "available." *Id.; see City of Lawrenceburg v. Milestone Contractors, L.P.,* 809 N.E.2d 879, 883 (Ind.Ct.App.2004) ("Construction of contract language that would render any words, phrases, or terms ineffective or meaningless should be avoided."), *trans. denied.* For instance, employers of delivery drivers will most often either furnish a vehicle for the driver's use or require the driver to use their own, and only rarely if ever would employers merely make company cars available to delivery drivers.

■ In that sense, and while we emphasize that neither compensation nor an employment relationship are required to furnish a vehicle, our analysis in *Smith* supports a conclusion that "furnish" means one is given keys to access and permission to use a given vehicle for a purpose as general or specific as both the furnisher and recipient mutually understand. *See Grinnell Mut. Reinsurance Co. v. Anderson,* 427 N.W.2d 274, 275–76 (Minn.Ct.App.1988) (concluding in determining the meaning of the "furnished or available for ... regular use" exclusion, "consideration should be given both to the agreement between the insured and the owner of the involved vehicle and to the actual use of the vehicle by the insured") (citing *Boedigheimer v. Taylor,* 287 Minn. 323, 178 N.W.2d 610, 613 (1970) ("consideration is to be given to the agreement by which the owner of the insured automobile was permitted to use the non-owned automobile, as well as his actual use thereof")); *Brooks v. Link,* 212 Kan. 690, 512 P.2d 374, 377 (1973) (determining a vehicle was furnished for regular use based on facts that showed a "definite agreement between Shirley and Kenneth that neither had to ask permission of the other to use his or her automobile").

The concept of a mutual understanding is thereby important, but should *not* allow an insured to avoid the exclusion by baldly claiming a misunderstanding between him and the furnisher of a vehicle. Rather, the concept of mutual understanding may be helpful in this and other similar cases in illustrating why this exclusion applied to the delivery driver in *Smith.* Indeed, the delivery driver and employer in *Smith* had a mutual understanding that the driver would be given keys to access and permission to drive the vehicle to make deliveries.

This concept may be reasonably inferred as part of the meaning of the undefined term in the insurance policy. Accordingly, the concept of mutual understanding is helpful in determining whether a vehicle was furnished to another only to the extent that it focuses factfinders on the primary concern here—the nature and extent of permission for using the vehicle. *See Central Sec. Mut. Ins. Co. v. DePinto,* 235 Kan. 331, 681 P.2d 15, 19 (1984) ("It seems

to us that the availability of the car and the number of times it is used and the presence or absence of an express or implied understanding as to use are simply factors to be considered along with all the other circumstances in the case in determining whether or not a vehicle has been furnished for 'frequent or regular use' within the meaning of an insurance policy.") (citation omitted).

In sum, as to the meaning of furnish, the issue of whether Rike "[f]urnish[ed]" the Focus to Kinser may be resolved by exploring the nature and extent of Rike's permission for Kinser to use the Focus, from the view of both Kinser and Rike.[4] Appellants' App. at 128. We also suggest that the parties may untangle this issue by examining the degree to which Kinser and Rike understood the nature and extent of Rike's permission for Kinser's use of the Focus.

Rike asserted in a deposition that if Kinser wanted to use the Focus without her then he would ask for permission. Kinser sought permission only once, and Rike granted him permission. At oral argument we explored the possibility that Kinser's need for permission was merely pro forma, but the record provides no answer. Therefore it is unclear if Kinser actually felt he needed permission or if Rike intended to sincerely consider whether to allow Kinser to use the Focus each time he asked for permission. This constitutes a genuine issue of material fact that would resolve whether Rike furnished the Focus to Kinser.

Because whether Rike furnished the Focus to Kinser remains unclear based on the designated evidence and whether Kinser is excluded from coverage if the Focus was furnished *or* available for Kinser's

regular use, we next turn to whether the Focus was "available," *id.*, for Kinser's regular use.

Neither the policy nor prior cases clarify the meaning of the term "available" in this exclusion. *Id.* The dictionary defines "available" as "1. suitable or ready for use; . . . at hand . . . 2. readily obtainable; accessible. . . ." The Random House Dictionary of the English Language, The Unabridged Edition, 102 (1967). Applying these definitions, the designated evidence does not reveal if the Focus was readily obtainable to Kinser or ready for his use. Kinser's exact reason for having a key to the Focus may affect this determination. The designated evidence reveals that Kinser had a key and used that key when driving himself and Rike to work. Appellants' App. at 153. And yet, Rike stated that "[t]he main reason" for Kinser possessing a key was "for lock-out purposes." *Id.* This might affect the determination of "availab[ility]" because Rike's testimony as to the reason might support an inference that the Focus was not readily available for Kinser's use. These and other nuances among the facts may affect whether the Focus was "available" for Kinser's use, and therefore whether the Focus was available for his use is a genuine issue of material fact.

We also note that to the extent Kinser felt the need to or actually did need to ask for permission to use the Focus for a purpose other than driving the couple to work, a finding that it was not "[f]urnished" or "available" to him and the resulting refusal to apply this exclusion would not interfere with the purpose of the exclusion. This is so because Kinser would not have been attempting to surrep-

---

4. Kinser is deceased, but it is reasonable that some evidence may divulge his understanding while living.

titiously obtain insurance for driving the Focus without purchasing insurance for the same because he felt he needed to obtain permission to drive the Focus in the first place. And if the facts are otherwise, in support of a finding that the Focus was in fact furnished or available for Kinser's regular use, the resulting application of this exclusion would also fulfill the purpose of the exclusion because Kinser reasonably should have purchased coverage for the Focus but did not.

In addition to the genuine issues of material fact of whether the Focus was furnished to or made available to Kinser, a genuine issue of material fact also remains as to whether Kinser "regular[ly] use[d]" the Focus. Regular use analysis is "fact intensive." 8A Couch on Ins.3d § 118:40 (2010). "Factors to be employed in the determination include time, place, purpose of use, and availability, as well as any restrictions placed upon the insured's use of the vehicle." *Id.* As discussed above, any restrictions upon Kinser's use of the Focus are unclear from the designated evidence. Because a factual issue remains as to regular use, we need not opine on Appellants' proposal that we adopt and apply an exception that would preclude an insured's exclusion from coverage if "the insured's use of the vehicle at the time of the accident is not within the scope of the regular use for which it is furnished." 7 Am.Jur.2d Automobile Insurance § 213; *see Kunze v. State Farm Mut. Auto. Ins. Co.*, 197 N.W.2d 685, 689 (N.D.1972).

### Conclusion

A genuine issue of fact remains as to whether the Focus was furnished or available for Kinser's regular use, thereby precluding summary judgment for either Indiana Insurance or Appellants. Accordingly, we reverse the trial court's summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

RILEY, J., and KIRSCH, J., concur.